467 P.2d 1002

· STATE of New Mexico, Plaintiff-Appellee,

v.

James Ellis HARDISON, J. B. Jackson and Louella Jackson, Defendants-Appellants.

No. 415.

Court of Appeals of New Mexico.

March 27, 1970.

Norman E. Runyan, Tucumcari, for defendants-appellants.

James A. Maloney, Atty. Gen., Santa Fe, James V. Noble, Asst. Atty. Gen., for appellee.

## OPINION

WOOD, Judge.

Defendants were convicted of violating § 40A–16–1, N.M.S.A.1953 (Repl.Vol. 6). The 1969 amendment to this section is not applicable. Their crime was stealing insulated copper wire strung between poles north of and parallel to railroad tracks and used by the railroad for signaling. Their appeal raises three issues: (1) sufficiency of the circumstantial evidence; (2) identification of an exhibit; and (3) relevancy and materiality of another exhibit.

### Circumstantial evidence.

■ Defendants were convicted on circumstantial evidence. To support a conviction, circumstantial evidence "* * * must be inconsistent with any reasonable hypothesis of defendant's innocence. * * *" State v. Seal, 75 N.M. 608, 409 P.2d 128 (1965); State v. Hovey, 80 N.M. 373, 456 P.2d 206 (Ct.App.1969) and cases therein cited. Defendants claim the evidence does no more than raise a suspicion as to their guilt; that the evidence fails to "* * * exclude every reasonable hypothesis other than the guilt of the defendant. * * *" State v. Easterwood, 68 N.M. 464, 362 P.2d 997 (1961).

Defendants rely on State v. Seal, supra. In that case Seal was in Hobbs at the time of the crime and in Eagle Pass, where the stolen property was recovered, at the time the property was recovered. Footprints at the scene of the crime and at the motel where Seal was staying were "* * * made by the same shoe and were similar in every detail. * * *" Tracks, made by the same kind of tire as those on Seal's vehicle, were found at the scene, at the place where the goods were recovered and at the motel. Seal attempted to elude the police when taken into custody. The foregoing created a suspicion of Seal's guilt but did not exclude every reasonable hypothesis other than guilt because the footprints were never linked to Seal and there was no showing that the tire tracks were made by the tires on Seal's car.

The area from which the signal wire was stolen is 69 feet north of the railroad tracks and approximately 190 feet from the north end of a public roadside park. The park is approximately four miles east of Logan, New Mexico and on the north side of the highway. Sometime between 2:00 A.M. and 3:30 A.M., the car driven by Hardison was found parked on a gravel road at the north end of the park behind some trees.

We are concerned with footprints leading from the car to where the wire was cut.

■ Smooth soled tracks went from the car to an area where some of the cut wire was found. Another set of smooth soled tracks was found in a portion of the wire cutting area and went back to the car. Louella Jackson was discovered sitting in the car. She was wearing smooth soled moccasins.

Do the circumstances of Louella's smooth soled moccasins and the smooth soled tracks exclude every reasonable hypothesis other than her guilt? No. There is no evidence comparing a track made by Louella's moccasins with the smooth soled prints observed by the officer. Were they the same length or width? We do not know. Was there anything indicating the prints were made by a woman? We do not know. The officer assumed the smooth soled tracks were made by Louella, but no attempt was made to see if her moccasins matched these tracks. We have Louella's presence, her smooth soled moccasins and smooth soled tracks, but we have nothing connecting the smooth soled prints to Louella other than her presence. See State v. Seal, supra. In our opinion, it is reasonable to hypothesize that some unidentified occupant of the car made the smooth soled tracks. We reverse Louella's conviction. Compare State v. Campos, 79 N.M. 611, 447 P.2d 20 (1968).

It is different as to the two men. Two sets of tracks went from the trunk of the car to the area where the wire had been cut. Both sets of tracks (they were different in size) showed ridges through them; the track impressions indicated they were

made by a shoe or boot with cleats across the sole and the heel. Tracks of this nature were observed throughout the length of the line where the wire had been cut. They were also observed crossing an area serving as a fire guard and into a pasture.

■ Both men were discovered and arrested after daylight. J. B. Jackson was on a railroad track west of Nara Visa. We do not know how far west of Nara Visa Jackson was discovered. Hardison was 10 or 12 miles "this side" (southwesterly) of Nara Visa, or approximately ten miles from the scene of the crime. There being no explanation of the flight of the two men, the jury may draw an inference of guilt from the unexplained flight. State v. Rodriguez, 23 N.M. 156, 167 P. 426, L.R.A.1918A, at 1016 (1917).

Both men were wearing boots when arrested. Both sets of boots had cleats matching the description of the cleats in the tracks observed by the officer. The boots of the men were taken to the scene. The boots matched the tracks at the scene, both in length and width, "Just exactly the size of the track."

Some of the wire had been moved from the area where cut and was found south of the railroad tracks forty-four feet from the gravel road on which the car was parked.

■ The tracks from the car and along the line of the cut wire are connected to the two men. Their flight from the scene is unexplained. Some of the wire had been moved from the area of the cutting and in the direction of the car more than a hundred feet. These circumstances exclude every reasonable hypothesis other than guilt.

The two men present three arguments for an opposite conclusion. First, they attack the credibility of the evidence to the effect that the boots of the two men matched tracks at the scene. The attack is based on the fact that ridges would be left by a track from the boots of the two men and the evidence is undisputed that when the officer matched the boots with the tracks, there was no match as to these ridges.

This argument is without merit. It ignores testimony as to physical conditions. The area was very sandy, thus any tracks would tend to crumble. This sandy condition made it impossible to make a cast from the tracks. During the night, and the investigation, the weather was such that the crust of the sand froze. This preserved the general outline of some of the tracks although, because of the crust when the matching occurred, no match could be made as to ridges left by the cleats. This argument also ignores the officer's testimony that he observed tracks with the ridges before the freeze occurred.

Second, an empty whiskey bottle was found in the car. The men assert that it is a reasonable hypothesis that they fled from the scene to escape arrest for drunkenness. Such a hypothesis is not reasonable in the light of the testimony as to the tracks and their location.

Third, the men claim nothing " * * * negates the reasonable hypothesis that the wire was being cut or had been cut before the defendants arrived at the public park. It is equally reasonable that the arrival of the defendants in the area interrupted the work of the thieves and not the arrival of the police officers." The location of the tracks along the area of the cut wire and the flight of the two men render these hypotheses unreasonable.

*Evidence—identification of exhibit.*

■ Ten rolls of wire were admitted as exhibits. The evidence shows wire in the amount of ten rolls was stolen. Defendants assert the evidence shows seventeen rolls of wire were recovered at the scene; a surplus of seven rolls. They contend the exhibits were not identified as the wire actually stolen or the surplus wire; that the exhibits were admitted " * * * without identification as the particular wire allegedly stolen. * * *" This claim is material because the degree of the offense depends on the value of the wire that was stolen. Section 40A–16–1, supra. Testimony as to value was based on the wire admitted as exhibits. Thus, if some of the rolls of wire

were not actually stolen wire, they should not have been admitted over defendants' objection.

This contention is based on the assertion that seventeen rolls of wire were recovered. The witness identified the places where seven of the rolls were recovered, testified that ten rolls of wire had been cut and that " * * * we were three rolls of wire short." The witness testified that ten rolls of wire were eventually recovered from the area but never identified the precise point of recovery of three of them. Defendants' claim of seventeen rolls recovered results from confusing the total rolls recovered with testimony as to the precise location of seven of them. The rolls of wire, admitted as exhibits, were identified not only as the wire recovered at the scene, but as the wire that was cut. The evidence does not show any surplus wire. This contention is without merit because it lacks a factual basis.

*Evidence—relevancy and materiality of an exhibit.*

■ Hardison's car was searched with his consent. A fifty foot cotton rope with two pipe T's tied on one end was found in the car. A witness testified: "It can be used to throw the heavy end, the pipe T's, up over a wire and it will wrap around the wire and you can pull the wire down to where you can reach and cut it." The exhibit was admitted for a limited purpose— " * * * that it can be used for what the witness said. * * *"

On cross-examination, the witness reiterated the exhibit's possible use, but also testified that from its looks, it hadn't been so used. Defendants assert that admission of the exhibit was error because there was no evidence that the exhibit had been used in any crime and no evidence connecting the exhibit to the crime with which defendants were charged.

In State v. Everitt, 80 N.M. 41, 450 P.2d 927 (Ct.App.1969), the defendant's car was searched and two loaded revolvers were seized. An issue on the appeal was the admissibility of the revolvers in a burglary prosecution. We held the revolvers to have

been properly admitted as " * * * relevant and material to the question of defendant's intent and his preparation in connection with the three burglary charges * * *."

Here, the connection with the exhibit is established; the exhibit was taken from Hardison's car. See State v. Gray, 79 N.M. 424, 444 P.2d 609 (Ct.App.1968). Further, the exhibit was connected with the crime. The exhibit was identified as a device capable of being used in committing the crime with which defendants were charged—larceny of the signal wire. See State v. Grissom, 35 N.M. 323, 298 P. 666 (1930). Since the exhibit could have been so used, it was relevant and material to the preparation and intent of defendants, even though there is no evidence that, in fact, the exhibit was so used. Sanders v. United States, 238 F.2d 145 (10th Cir. 1956); State v. Everitt, supra.

The admission of the exhibit, to show it could be used in committing the larceny, was not error.

The convictions and sentences of Hardison and J. B. Jackson are affirmed. Louella's conviction and sentence is reversed. The cause is remanded with instructions to discharge Louella Jackson.

It is so ordered.

OMAN and HENDLEY, JJ., concur.