[No. 3103–3.   Division Three.   January 11, 1979.]

*In the Matter of the Welfare of*
MARK D. LUFT, ET AL.

*B. Rolf Borgersen* of *Okanogan–Ferry County Public Defender,* for appellants.

*Stephen Henley, Prosecuting Attorney,* and *Douglas S. Boole, Deputy,* for respondent.

Roe, J.—Mark Luft is 17 years old; his brother, Scott Luft, is 16. Both were convicted in juvenile court of first-degree possession of stolen property which consisted of

seven guns. These guns were found by the court to be of a value of at least $3,000. They were stolen from a private residence, but the above minors were not charged with the theft. The events giving rise to the conviction of these juveniles occurred on August 16, 1978, and their causes were adjudicated in September of 1978; hence, their treatment is governed by the Juvenile Justice Act of 1977, which became effective July 1, 1978.

Under that act, standards for disposition are established by the secretary of the Department of Social and Health Services. RCW 13.40.160 precludes appeal if the disposition is within the standard range. In this case the disposition made by the juvenile court judge was in excess of the range. The youths were committed to the Department of Social and Health Services, Division of Institutions, for a minimum of 30 and a maximum of 40 weeks. The minors appealed and the commissioner of this court ruled that the juvenile court judge was in error in exceeding the standards and reversed. The State moved for modification of the commissioner's ruling, and reinstatement of the juvenile court judge's disposition.

■ The threshold question is whether the standards for disposition established by the secretary are effective. By RCW 13.40.030(1)[1] the secretary had a duty to propose to the legislature no later than November 1 of each even-numbered year disposition standards for all offenses which would

---

[1]RCW 13.40.030(1) reads:

"(1) The secretary shall propose to the legislature no later than November 1st of each even-numbered year disposition standards for all offenses. The standards shall establish, in accordance with the purposes of this chapter, ranges which may include terms of confinement and/or partial confinement and/or community supervision established on the basis of a youth's age, the instant offense, and the history and seriousness of previous offenses, but in no case shall the period of confinement and supervision exceed that to which an adult may be subjected for the same offense(s). Standards proposed for offenders listed in RCW 13.40.020(1) shall include a range of confinement which shall not be less than thirty days. No standard range may include a period of confinement which includes both more than thirty, and thirty or less, days. Disposition standards proposed by the department shall provide that in all cases where a youth is sentenced to a term of

include terms of confinement and/or partial confinement and/or community supervision established on the basis of a youth's age, the instant offense, and the history and seriousness of previous offenses, . . .

If the legislature fails to adopt or refer the proposed standards to the secretary by February 15 of the following year, "the proposed standards shall take effect without legislative approval on July 1st of that year." RCW 13.40.030(2). By statute the secretary was to propose standards no later than November 1, 1977, 8 months before the effective date of the act, July 1, 1978, which standards shall be in effect from July 1, 1978, to June 30, 1979.[2] The legislature did not meet in 1978. Nevertheless, we conclude, referring to RCW 13.40.030(2),[3] that since the legislature failed to adopt or refer the proposed standards, then they took effect without legislative approval.

In determining what standards for disposition apply, a total point score (TPS) is computed for each juvenile. These are established by the secretary pursuant to RCW 13.40.030 on the basis of the youth's age, the instant

confinement in excess of thirty days the department may impose an additional period of parole not to exceed eighteen months. Standards of confinement which may be proposed shall relate only to the length of the proposed terms and not to the nature of the security to be imposed. The secretary shall also submit guidelines pertaining to the nature of the security to be imposed on youth placed in his or her custody based on the age, offense(s), and criminal history of the juvenile offender. Such guidelines shall be submitted to the legislature for its review at the same time the department proposes its disposition standards."

[2]RCW 13.40.030(4) reads:
"Notwithstanding any other provision of this section, the secretary shall propose standards and submit guidelines to the legislature no later than November 1, 1977. The legislature shall consider the proposed standards and submitted guidelines during the following year in the manner prescribed by subsections (2) and (3) of this section. Such standards shall be in effect for the period July 1, 1978, to June 30, 1979."

[3]RCW 13.40.030(2):
"(2) The legislature may adopt the proposed standards or refer the proposed standards to the secretary for modification. If the legislature fails to adopt or refer the proposed standards to the secretary by February 15th of the following year, the proposed standards shall take effect without legislative approval on July 1st of that year."

offense, and the history and seriousness of previous offenses.

Mark, age 17, emerged with a TPS of 54, which authorized 60 to 90 hours of community service, 1 to 2 days of detention, but no commitment. Scott, age 16, had a TPS of 98.8, which would invoke community service of 100 to 150 hours, detention of 15 to 30 days, but no commitment. Limitations on sentencing are found in RCW 13.40.160. Generally, a disposition within the standard range requires no explication, but a disposition outside the range may be made only if the court sets forth reasons why disposition within the range would "effectuate" a manifest injustice. RCW 13.40.160(4) applies to these two youths. The judge found manifest injustice.

> "Manifest injustice" means a disposition that would impose an excessive penalty on the juvenile or a clear danger to society in light of the purposes of this chapter;

RCW 13.40.020(12). In reversing the juvenile court, the commissioner stated:

> Assuming the record supports the reasons enunciated, the reasons do not clearly and convincingly support the conclusion of manifest injustice *because they do not inhere in the aggravating factors surrounding the offense* as developed at the disposition hearing.

(Italics ours.) He further stated that the term "criminal history," as defined in RCW 13.40.020(6)(a):[4]

> precludes a large portion of the probation officer's report from consideration as aggravating factors.

Finding the disposition to be excessive, he vacated it and remanded for disposition within the standard range.

---

[4]RCW 13.40.020(6)(a):

"(6) 'Criminal history' shall include all criminal complaints against the respondent where:

"(a) The allegations were found correct by a juvenile court. In any judgment where a respondent is convicted of two or more charges arising out of the same course of conduct, where one charge is included within the other, then only the highest charge from among these shall count as an offense for the purposes of this chapter; . . ."

846

■ ■ Actually, RCW 13.40.160(4)(a)(ii), subjected to close reading, reveals that the court is limited to aggravating factors surrounding the offense only when sentencing *within* the range and states:

> where the appropriate standard range does not include a period of confinement exceeding thirty days, [the court shall] sentence the offender to a determinate term *within* the appropriate standard range *in which case* the court shall consider only those aggravating and mitigating factors set forth in RCW 13.40.150 . . .

(Italics ours.) The phrase "in which case" refers to the previous phrase, namely, "a determinate term within the appropriate standard range," and does not apply to a disposition outside of that range based on a finding of manifest injustice.

Thus, it would seem that the commissioner's ruling that the reasons enunciated "do not clearly and convincingly support the conclusions of manifest injustice *because they do not inhere in the aggravating factors surrounding the offense*" is too limited and confined an inquiry. (Italics ours.) We read the statute as not only permitting, but mandating, consideration of factors other than those aggravating ones inhering in the offense.

Under RCW 13.40.160(1), in a disposition order, a serious offender must be committed to the Department, unless the court finds a manifest injustice. RCW 13.40.160(2) provides that a minor, or first offender, serve a term of community service, but provides for disposition outside the range upon a finding of manifest injustice.

Under RCW 13.40.160(4)(a)(ii), applicable to this case, where the offender is found to have committed an offense and is neither a minor nor a first offender (hence, a middle offender), the court shall, "consistent with the purposes of this chapter":

> (4) . . . (ii) where the appropriate standard range does not include a period of confinement exceeding thirty days, sentence the offender to a determinate term within the appropriate standard range in which case the court

shall consider only those aggravating and mitigating factors set forth in RCW 13.40.150 and shall state its reasons for selecting the particular punishment imposed, or (b) shall impose a term of community supervision. *If the court sentencing pursuant to subsection (a)(i) or (ii) of this section finds that a disposition within the standard range would effectuate a manifest injustice, it may impose a disposition other than community supervision outside the range but only after it enters reasons* upon which it bases its conclusion that disposition within the standard range would effectuate a manifest injustice. A disposition so imposed outside the standard range may be appealed as provided in RCW 13.40.230 by the state or the respondent. A disposition within the standard range or of community supervision shall not be appealable under RCW 13.40.230.

(Italics ours.) Subparagraph (a)(ii) does not apply here only because the court did not sentence the offenders to a determinate term within the appropriate standard range. Had it done so, then it could consider only those aggravating and mitigating factors set forth in RCW 13.40.150. Rather, the italicized part following subsection (b) applies since the court found that a disposition within the standard range would effectuate a manifest injustice. Accordingly, it imposed a disposition (other than community supervision) outside the range, namely, the youths were sentenced to the Department of Institutions. It is the ultimate disposition with which we are concerned. The court does not have to give two sets of reasons: (1) why it is not sentencing to a determinate term within the standard range, and (2) what its reasons are for concluding that a sentence within the standard range would effectuate a manifest injustice. The court only has to give one set of reasons and based upon those reasons pursuant to statute we determine whether they clearly and convincingly support a conclusion of manifest injustice, and if they do, additionally, whether the sentence imposed is neither clearly too excessive nor clearly too lenient.

We must now consider whether adequate reasons were entered in support of this disposition. Looking to RCW

13.40.150,[5] the matters to be considered prior to entry of a disposition order are summarized:

[5]RCW 13.40.150:

"(1) In disposition hearings all relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value, even though such evidence may not be admissible in a hearing on the information. The youth or the youth's counsel and the prosecuting attorney shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making reports when such individuals are reasonably available, but sources of confidential information need not be disclosed. The prosecutor and counsel for the juvenile may submit recommendations for disposition.

"(2) Before entering a dispositional order as to a respondent found to have committed an offense, the court shall hold a disposition hearing, at which the court shall:

"(a) Consider the facts supporting the allegations of criminal conduct by the respondent;

"(b) Consider information and arguments offered by parties and their counsel;

"(c) Consider any predisposition reports;

"(d) Afford the respondent and the respondent's parent, guardian, or custodian an opportunity to speak in the respondent's behalf;

"(e) Allow the victim or a representative of the victim and an investigative law enforcement officer to speak;

"(f) Determine the amount of restitution owing to the victim, if any;

"(g) Determine whether the respondent is a serious offender or a minor or first offender;

"(h) Consider whether or not any of the following mitigating factors exist:

"(i) The respondent's conduct neither caused nor threatened serious bodily injury or the respondent did not contemplate that his or her conduct would cause or threaten serious bodily injury;

"(ii) The respondent acted under strong and immediate provocation;

"(iii) The respondent was suffering from a mental or physical condition that significantly reduced his or her culpability for the offense though failing to establish a defense;

"(iv) Prior to his or her detection, the respondent compensated or made a good faith attempt to compensate the victim for the injury or loss sustained; and

"(v) There has been at least one year between the respondent's current offense and any prior criminal offense;

"(i) Consider whether or not any of the following aggravating factors exist:

"(i) In the commission of the offense, or in flight therefrom, the respondent inflicted or attempted to inflict serious bodily injury to another;

"(ii) The offense was committed in an especially heinous, cruel, or depraved manner;

"(iii) The victim or victims were particularly vulnerable;

"(iv) The respondent has a recent criminal history or has failed to comply with conditions of a recent dispositional order or diversion agreement; and

"(v) The respondent was the leader of a criminal enterprise involving several persons;

(1) All relevant and material evidence, including oral and written reports, may be relied upon to the extent of its probative value, even though such evidence may be inadmissible in a hearing on the information. Thus, the court is not limited to any written record or any written statement of previous offenses;

(2)(a) The facts supporting the allegation, (c) any predisposition reports, (i)(iv) the recent criminal history or failure to comply with conditions of a recent disposition order or diversion agreement. We are not concerned with a previous disposition order or diversion agreement in this case;

(2)(i)(v) Whether the boy was a leader in a criminal enterprise involving several persons. It might be observed that this was an enterprise involving two persons; presumably one was the leader, unless it was a joint effort, in which event both were leaders. This was not a solo performance;

(2)(j)(iv) denies consideration of economic or social class of the respondent's family.

■ As indicated, a predisposition report (which is not defined in the act) may be considered. Presumably it fulfills the functions of a presentence report utilized in adult criminal courts. Such reports are always broader than mere criminal history and include many factors, both mitigating and aggravating, which are peculiar to a particular defendant. There is no precise limitation on the contents of a presentence report. Of course, counsel for those charged have access to it for rebuttal. However, sources of confidential

---

"(j) The following factors shall not be considered in determining the punishment to be imposed:

"(i) The sex of the respondent;

"(ii) The race or color of the respondent or the respondent's family;

"(iii) The creed or religion of the respondent or the respondent's family;

"(iv) The economic or social class of the respondent or the respondent's family;

"(v) Factors indicating that the respondent may be or is a dependent child within the meaning of this chapter;

"(k) A court shall not commit a youth to a state institution solely because of the lack of facilities, including treatment facilities, existing in the community."

information need not be disclosed. This would clearly imply great latitude in considering available information. To rephrase the statute, the court may receive and rely on all relevant and material evidence during the disposition hearing.

Among the purposes of the act, which may be considered, it is stated:

It is the further intent of the legislature that youth, in turn, be held accountable for their offenses and that . . . courts carry out their functions consistent with this intent.

It is to:

(a) Protect the citizenry from criminal behavior;

and

(d) Provide for punishment commensurate with the age, crime, and criminal history of the juvenile offender.

RCW 13.40.010. The juvenile court had the following background information before it in considering disposition of the two youths:

PAST SITUATIONS: (Mark)
June 13, 1972: Rock throwing (Wasco County, Oregon)
Disposition: Informal handling.
November 1, 1975: Possession of Stolen Property (Wasco County, Oregon)
Disposition: Informal handling.
March 12, 1977: Possession of a Prohibited Weapon (San Joaquin County, California)
Disposition: Informal handling.
May 18, 1977: Possession of drugs without prescription (San Joaquin County, California)
Disposition: Informal handling.
October 4, 1977: Auto theft (San Joaquin County, California)
Disposition: Informal handling.
January 7, 1978: Disorderly conduct, glue sniffing, and harrassment [sic] (Okanogan County, Washington)
Disposition: Informal handling with 5 days detention
February 24, 1978: Reckless Driving (San Joaquin County, California)
Disposition: None.

July 1, 1978: Hit and Run (Wasco County, Oregon)
Disposition: Automatic remand to adult traffic court.

Mark dropped out of high school at the time he was in the 11th grade. His intentions were not to finish.

PAST SITUATIONS: (Scott)
April 4, 1975: Pettit [sic] theft (San Joaquin County, California)
Disposition: Informal handling.
September 17, 1975: Vehicle Tampering (San Joaquin County, California)
Disposition: Informal handling.
July 4, 1977: Second Degree theft (Wasco County, Oregon)
Disposition: Formal finding of guilt and returned to California for disposition.
October 25, 1977: Misdemeanor Burglary and felony Burglary (San Joaquin County, California)
Disposition: Formal finding of guilt (Wardship, probation and 60 days in detention).
April 5, 1978: Shoplifting (Wasco County, Oregon)
Disposition: Returned to California on an outstanding warrant.
July 13, 1978: Second degree Burglary
Disposition: Prosecution still pending.
    For the Court's information California dismissed wardship on Scott on 6/19/78.

Scott indicated he should be in the 11th grade but was prevented from enrolling due to his incarceration.

Informal disposition is not acquittal and is not inconsistent with guilt or with admonitions, warnings, or promises in order to avoid court appearance. The record also reflects other matters before the sentencing judge.

According to the record of September 12, 1978, one of the guns was valued in excess of $1,500. The youths had some guns for sale that were "hot from Wenatchee." The guns were kept in a "stump tree" [sic] and they tried to sell them all for $500, much below the market price, except one which was valued at $1,500. One of the boys told a prospective buyer "not to get caught with them [the guns]." Notwithstanding, each of the youths denied any knowledge of the guns despite the fact that other witnesses testified

they recovered the stolen guns from them. The court stated, "[I]t appears to me that Scott and Mark just are not telling the truth." The court believed the value of the guns to be $3,000, and that defendants were willing to sell them for a fraction of that amount.

Steve Ayres, probation officer for the Okanogan County Juvenile Court, requested the court to make a finding of "manifest injustice" and presented the above history. He felt that Scott and Mark had never been held accountable for their behavior, since they were given probation in Oregon and California. There was further acting out. He believed that probation could not provide the necessary structure for correction. The court found the youths to be completely antisocial and believed they were headed straight for the penitentiary. The judge thought the defendants were dangerous. He found that they committed perjury in the courtroom. In summarizing his finding of manifest injustice, the judge stated, "I think in view of the statements contained in the report which Mr. Ayres filed, the nature of this crime and the perjury, there's ample grounds . . ." for a conclusion of manifest injustice.

The court also made an informal finding of further criminal activity or delinquency upon their release from the Okanogan Juvenile Detention Center.

As to Scott Luft, the court entered formal findings:

2. That the Court finds that sentencing within the appropriate guidelines would be a manifest injustice in that:

a. Scott A. Luft has an extensive delinquent record in both the State of California and the State of Oregon, as is reflected in the Court Report dated the 8th day of September, 1978.

b. That the facts involved in this case, to wit: that stolen property of weapons was serious.

c. That the Court finds that the Defendants, when examined under oath, lied as to their involvement in the instant matter.

d. That immediately after release of Scott from the Okanogan Juvenile Detention Center, Scott was involved in further criminal activity, theft and assault.

e. The further reasons that are enumerated in the Court Report of September 8, 1978.

As to Mark Luft, the court entered formal findings:

2. That the Court finds that sentencing within the appropriate guidelines would be a manifest injustice in that:

a. Mark D. Luft has an extensive delinquent record in both the State of California and the State of Oregon, as is reflected in the Court report dated the 8th day of September, 1978.

b. That the facts involved in this case, to wit: that stolen property of weapons was serious.

c. That the Court finds that the Defendants, when examined under oath, lied as to their involvement in the instant matter.

d. That immediately after release of Mark from the Okanogan Juvenile Detention Center, Mark was involved in further criminal activity, theft and assault.

e. The further reasons that are enumerated in the Court Report of September 8, 1978.

In a criminal case, perjury by the defendant may be considered in sentencing. *See United States v. Grayson,* 438 U.S. 41, 53, 57 L. Ed. 2d 582, 591, 98 S. Ct. 2610 (1978). The judge may consider the "defendant's whole person . . . as manifested by his conduct at trial and his testimony" thereunder in "[t]he 'parlous' effort to appraise 'character,'" and this includes false testimony made by a defendant in a . case. Rejected was the argument that consideration of perjury would "chill" defendants from exercising the right to testify.

RCW 13.40.230 provides for an appeal from an order of disposition. RCW 13.40.230(2) states:

To uphold a disposition outside the standard range, . . . the court of appeals must find (a) that the reasons supplied by the disposition judge are supported by the record which was before the judge and that those reasons clearly and convincingly support the conclusion that a disposition within the range, . . . would constitute a manifest injustice, and (b) that the sentence imposed was neither clearly excessive nor clearly too lenient.

Thus, our purpose is to find if the reasons supplied by the disposition judge are supported by the record which was before him and if those reasons clearly and convincingly support the conclusion that a disposition within the range would constitute a manifest injustice and further, that the sentence imposed was not clearly excessive. We believe that the reasons supplied by the judge are supported by the record which was before him and that his interest in protecting and helping the juveniles as well as the community justified exceeding the standard disposition.

However, that is not the extent of the inquiry. We also must determine whether or not the sentence imposed was clearly excessive. This would be a sentence with a minimum of 7 months and a maximum of 9 months. The terms are not clearly excessive or too lenient. We hold that the formal findings made by the court would of themselves be sufficient to justify the conclusion reached. Nevertheless, we believe the statute contemplates consideration of other factors such as purpose of the act, predisposition reports, etc., which are part of the record on appeal and which need not be reduced to formal findings when the record reveals that the judge has considered them in his disposition.

The judgment of the trial court is affirmed.

GREEN, C.J., and MUNSON, J., concur.