784 P.2d 1021
**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Darrin JAMES, Defendant–Appellant.**

No. 10744.

Court of Appeals of New Mexico.

Nov. 2, 1989.

Certiorari Denied Dec. 21, 1989.

Hal Stratton, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

J. Michael Norwood, L. Vol. Whitley, Patti Swift, UNM Clinical Law Program, Albuquerque, for defendant-appellant.

## OPINION

CHAVEZ, Judge.

Defendant appeals his conviction of embezzlement of over $100 but less than $2,500, contrary to NMSA 1978, Section 30–16–8 (Repl.Pamp.1984). He challenges the sufficiency of the evidence to support his conviction and the propriety of the ag-gravating circumstances used by the court to increase his sentence. Defendant raises two other issues pursuant to *State v. Franklin,* 78 N.M. 127, 428 P.2d 982 (1967), *cert. denied,* 394 U.S. 965, 89 S.Ct. 1318, 22 L.Ed.2d 566 (1969). We affirm defendant's conviction and remand for resentencing.

Defendant was employed by the Allsup's store in Clovis for two years, working his way up to manager. In April of 1987, he was fired for violating company secured cash handling policies. Jay Finnell, defendant's immediate supervisor, testified that he entered the store and found defendant had left more than $2,200 in cash on the counter, unsecured. After defendant was fired, another $2,400 in cash was found under the check stand behind some books and papers, instead of in the floor safe. Later, irregularities with the record keeping of the store for the month of April 1987 were noticed. Discrepancies were found between the amount of the receipts on daily sales reports and the amount on the bank deposit tickets. Also, Judith Gatley, office operations manager for Allsup's, testified that money orders were sold and not reported to the main office. An investigation of these irregularities implicated defendant.

Finnell and Gatley testified regarding company procedures for reporting daily sales. The daily sales report reflected daily receipts and was compiled from information on the bank deposit slip and the cash register readings. The report was then sent to the main office where the daily sales report was compared to the detailed cash register tape. The main office also verified deposit tickets to make sure that cash receipts were actually deposited. It was the responsibility of the store manager or the assistant manager to complete this paperwork for the store.

The evidence indicated that the manager and assistant manager were also responsible for sending money order logs to the main office. The money order logs contained the numbers of the money orders in the cash register. As money orders were sold, the person selling them listed the amount of the money order and placed his

or her initials next to the number of the money order. For each money order sold, the store retained a copy reflecting the amount and number of the money order, and copies were attached to the log when it was sent to Allsup's main office.

## SUFFICIENCY OF THE EVIDENCE

■ Defendant claims that the case against him is based solely on circumstantial evidence. Therefore, he argues, there is no substantial evidence to support his conviction. In reviewing the evidence for sufficiency, we view the facts in the light most favorable to the state, resolving all conflicts therein and indulging in all permissible inferences in favor of the verdict. *State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978). The fact that the evidence is circumstantial makes no difference. *State v. Brown,* 100 N.M. 726, 676 P.2d 253 (1984). Circumstantial evidence is sufficient to establish the corpus delicti of a crime. *State v. Bejar,* 101 N.M. 190, 679 P.2d 1288 (Ct. App.1984). We do not reweigh the evidence on appeal, *State v. Santillanes,* 86 N.M. 627, 526 P.2d 424 (Ct.App.1974), nor do we consider whether there are explanations of the evidence consistent with innocence. *State v. Brown.*

The state presented evidence of discrepancies between the daily sales reports and deposit slips indicating shortages on six days in April 1987. It also presented evidence that during the month of April, the Allsup's store sold money orders that were not reported to the main office. Defendant contends the state did not establish beyond a reasonable doubt that he converted the missing money. He claims that other employees must have been responsible for the shortages or the shortages must have resulted from errors or machine malfunctions.

Evidence was presented that only the manager and assistant manager prepared the reports, counted the money, deposited the cash and had access to the floor safe. Defendant argues that there was evidence the assistant manager also prepared daily sales reports and money order logs. He argues that she had equal access to the money and that she prepared the daily sales reports on three of the occasions in question. The assistant manager, however, testified at trial and denied ever taking or converting Allsup's money for herself. Thus, the facts relied upon by defendant are not uncontroverted and consist of issues of credibility to be resolved by the jury as finders of fact. *See State v. Clokey,* 89 N.M. 453, 553 P.2d 1260 (1976).

Defendant argues that on two of the days when there were shortages, he was not present in the store, that although the evidence showed he signed the reports, he often signed the reports before they were final. The assistant manager testified that on several days when she noticed discrepancies, she called defendant to the store. On one day, he could not find the discrepancy because the cash was no longer available for counting. On another day, he claimed the assistant manager miscounted the money. On the other sales reports that did not match the deposit slips, defendant could not explain the discrepancies, but stated that it must have been an error and not willful conversion. He also suggested the discrepancies might have been due to a machine malfunction. The assistant manager testified, however, that she never noticed any such malfunction.

There was evidence of a $200 discrepancy on a money order defendant admitted selling. The original money order was for $210, but the white copy retained in the store's records was printed for only $10. Defendant's explanation was that he sold it to a clerk in his store who later reprinted the face original of the money order. There was also evidence, however, that the $200 discrepancy was not a reprint but was made at the time of the sale, thus implicating defendant.

There was evidence of other money orders sold for which there was no accounting. Defendant presented evidence that a clerk, whose initials appear on the log next to one of the missing money orders, quit the store upon learning of defendant's dismissal. He argues that her unexplained flight strongly suggests culpability. *See State v. Hardison,* 81 N.M. 430, 467 P.2d 1002 (Ct.App.1970).

All of this evidence created factual questions for the jury. The fact finder may reject defendant's version of events. *See State v. Gattis,* 105 N.M. 194, 730 P.2d 497 (Ct.App.1986). Conflicts in the evidence created by defendant's testimony do not make the state's evidence insubstantial. *See State v. Mora,* 81 N.M. 631, 471 P.2d 201 (Ct.App.1970). The question is not whether substantial evidence would have supported an opposite result but whether such evidence supports the result reached. *See State v. Sutphin,* 107 N.M. 126, 753 P.2d 1314 (1988). Based on the evidence presented, it was reasonable for the jury to reach the conclusion that defendant was responsible for at least a portion of the missing money. Defendant was found guilty of embezzlement over $100 but less than $2,500, a fourth degree felony. There was sufficient evidence to support the verdict. We affirm the trial court on this issue.

## AGGRAVATED SENTENCE

After defendant was found guilty, the trial court held a sentencing hearing. At the hearing, the court heard from, among others, the prosecutor, defense counsel, the probation officer who prepared the presentence report, and defendant himself. The judge found aggravating circumstances warranting an increase of six months to the eighteen-month basic sentence provided by law. *See* NMSA 1978, § 31–18–15.1 (Repl.Pamp.1987). The judgment entered by the court provided in applicable part:

> Defendant is * * * sentenced to be imprisoned by the Department of Corrections for a term of two (2) years with the Court having found *aggravating circumstances, to-wit: the Defendant refuses to admit any wrong doing and the Defendant having lied while under oath.*

> Execution of sentence is hereby suspended with the exception of twelve days already served, and Defendant is ordered placed on probation for a period of five (5) years * * * * [Emphasis added.]

If a court alters the basic sentence because of mitigating or aggravating circumstances, it must state its reasons for the alteration in the record. § 31–18–15.1(A).

Defendant argues the trial court's reasons for aggravating the sentence are improper. He claims that using suspected perjury as a sentencing factor impermissibly chills his right to testify and violates his due process rights because it is, in effect, punishment for a crime without the procedural safeguards of indictment, trial, and conviction. He also argues it is improper for a trial court to consider a defendant's failure to admit wrongdoing as this infringes on the fifth amendment privilege not to incriminate one's self.

Although the legislature has fixed basic sentences for non-capital offenses, NMSA 1978, Section 31–18–15 (Repl.Pamp.1987), sentencing judges have discretion to alter the basic sentence by one-third upon a finding of "any mitigating or aggravating circumstances surrounding the offense *or concerning the offender.*" § 31–18–15.1(A) (emphasis added). Among the factors that may be considered are "unusual aspects of the defendant's character, past conduct, age, health, any events surrounding the crime, pattern of conduct indicating whether he or she is a serious threat to society, and the possibility of rehabilitation." *State v. Segotta,* 100 N.M. 498, 501, 672 P.2d 1129, 1132 (1983); *State v. Bernal,* 106 N.M. 117, 739 P.2d 986 (Ct.App.1987). Thus, judges have wide discretion in the sources and types of information used to assist them in determining the kind and extent of punishment to be imposed. *State v. Montoya,* 91 N.M. 425, 575 P.2d 609 (Ct.App.1978).

In *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), the United States Supreme Court held that, in determining an appropriate sentence, a trial court may consider its belief that defendant lied while testifying. *Grayson,* although reaffirming the authority of the sentencing judge to evaluate the testimony of defendant on the witness stand, implicitly determined that the sentence to be imposed must be for the underlying offense, not for perjury. *Grayson* also emphasized that in determining whether or not to aggravate a defendant's sentence after consideration of his trial testi-

mony, the sentencing court must determine whether "that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society." 438 U.S. at 55, 98 S.Ct. at 2618. After discussing the evolution of individualized sentencing and the broad discretion afforded a judge when selecting the sources of information used in determining an appropriate sentence, *Grayson* observed that a defendant's dishonesty while under oath is a reliable indicator of his prospects for rehabilitation and thus, constitutes a valid sentencing consideration. *Id.*

Defendant urges this court not to adopt *Grayson* and to find that the New Mexico due process requirements prohibit the use of suspected perjury as a sentencing factor. He claims that New Mexico has different due process requirements on sentencing procedures from those in effect at the time of the *Grayson* decision. In New Mexico judges must state specific reasons for aggravating a sentence and may only alter the basic sentence by one-third, whereas the federal guidelines for sentencing at the time of *Grayson* allowed a broader range within which to sentence a defendant without the requirement that a judge state the reasons for choosing a particular sentence. This fact, however, does not mean our due process requirements are different. While we decline to address whether New Mexico's due process requirements are identical to federal due process requirements, we hold that a trial judge at sentencing may consider whether the defendant's trial testimony contained willful and material falsehoods, and if so, to use this as a factor in determining whether or not to enhance defendant's sentence, subject, however, to certain safeguards set forth by the *Grayson* decision.

A majority of jurisdictions permit the trial court, in assessing defendant's prospects for rehabilitation, to consider its belief that defendant lied while testifying. *See, e.g., Fox v. State,* 569 P.2d 1335 (Alaska 1977); *People v. Redmond,* 29 Cal.3d 904, 176 Cal.Rptr. 780, 633 P.2d 976 (1981); *People v. Wilson,* 43 Colo.App. 68, 599 P.2d 970 (1979); *People v. Meeks,* 81 Ill.2d 524, 44 Ill.Dec. 103, 411 N.E.2d 9 (1980); *State v. May,* 227 Kan. 393, 607 P.2d 72 (1980); *Commonwealth v. Thurmond,* 268 Pa.Super. 283, 407 A.2d 1357 (1979); *In re Welfare of Luft,* 21 Wash.App. 841, 589 P.2d 314 (1979); *State v. Finley,* 355 S.E.2d 47 (W.Va.1987); Annotation, *Propriety of Sentencing Judge's Consideration of Defendant's Perjury or Lying in Pleas or Testimony in Present Trial,* 34 A.L.R.4th 888 (1984). *But see Commonwealth v. Coleman,* 390 Mass. 797, 461 N.E.2d 157 (1984) (perceived perjury may not enter into the judge's determination of the severity of a sentence); *State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988) (perjury may not constitute a valid aggravating factor for sentencing purposes). But, while the majority of courts hold it permissible to consider defendant's perjury within the scope of evaluating character, many stress the clearly improper practice of enhancing a sentence as punishment for the substantive offense of perjury without an indictment, trial. or conviction thereon. *See, e.g., State v. Finley.* Therefore, several jurisdictions have enunciated safeguards to assure that the perceived perjury is not improperly used by the sentencing judge. *See, e.g., Strachan v. State,* 615 P.2d 611 (Alaska 1980); *Commonwealth v. Thurmond.*

The *Grayson* Court set forth safeguards and cautioned:

Nothing we say today requires a sentencing judge to enhance, in some wooden or reflex fashion, the sentences of all defendants whose testimony is deemed false. Rather, we are reaffirming the authority of a sentencing judge to evaluate carefully a defendant's testimony on the stand, determine—with a consciousness of the frailty of human judgment—whether that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society.

*Id.* 438 U.S. at 55, 98 S.Ct. at 2618.

Three safeguards are apparent from the *Grayson* language above. First, the Court

allows consideration of the suspected perjured trial testimony only as *one factor* among others which may bear upon a defendant's character and prospects for rehabilitation. Since *Grayson,* other jurisdictions demonstrate support for the Court's reasoning. In *Wilson,* the trial court imposed the maximum term solely on the judge's belief that defendant lied while testifying. In vacating the sentence, the Colorado appellate court held that the fact defendant may have lied under oath was insufficient, standing alone, to warrant the increase in sentence. Consideration must be given to all the factors which comprise the goals of sentencing. *Id. See also Strachan v. State.* But, in *Redmond,* where the trial court stated many specific reasons for imposing an increased sentence, the California Supreme Court held that the judge's belief that defendant had committed perjury was properly considered as one of many factors bearing on defendant's character.

A second safeguard found in *Grayson* is that the sentencing authority may legitimately consider evidence heard during trial and the demeanor of the accused. *Id.* 438 U.S. at 50, 98 S.Ct. at 2615, *citing Chaffin v. Stynchcombe,* 412 U.S. 17, 32, 93 S.Ct. 1977, 1985, 36 L.Ed.2d 714 (1973). The *Grayson* Court notes that the trial judge's opportunity to observe the defendant can frequently provide insights into an appropriate disposition. The cold record of the testimony and verdict affords a meager basis for determining whether defendant's testimony demonstrated a character that is not susceptible to rehabilitation. *United States v. Grayson; Commonwealth v. Thurmond.* The judge cannot simply rely on the jury's verdict in determining whether the testimony was false, but must make a careful, independent evaluation of defendant's rehabilitative potential. *Grayson.*

Third, under *Grayson* the sentencing judge should determine that the testimony was willfully and materially false before considering it as a sentencing factor. Thus, a misstatement by a defendant during his testimony constitutes an insufficient basis upon which to aggravate the sentence unless it is attributable to a willful decision to give false and material testimony. *Commonwealth v. Thurmond; State v. Finley.* The fact that a defendant cannot recollect or is uncertain regarding certain events is not a sufficient basis to increase a sentence based on suspected perjury. *Commonwealth v. Thurmond.*

Because the dividing line between the permissible and impermissible sentencing practice is difficult to discern, we hold that the consideration of false testimony is justified only under circumstances guaranteeing its probative value to sentencing *for the underlying offense.* We find these three safeguards to be the minimum required by due process.

Many courts have strongly discouraged consideration of suspected perjury as a sentencing factor. *See, e.g., United States v. Moore,* 484 F.2d 1284 (4th Cir.1973); *State v. Finley.* We find the admonition of the Fourth Circuit in *Moore* instructive on the potential dangers inherent in this practice:

> We caution, however, that sentencing judges should not indiscriminately treat as a perjurer every convicted defendant who has testified in his own defense. Witnesses induced by sordid motives or fear have been known to fabricate accusations with such guile that even conscientious triers of fact have been misled. Moreover, some essential elements of proof of criminal conduct, such as knowledge, intent, malice, and premeditation are sometimes so subjective that testimony about them cannot be readily categorized as true or false. Judges must constantly bear in mind that neither they nor jurors are infallible. A verdict of guilty means only that guilt has been proved beyond a reasonable doubt, not that the defendant has lied in maintaining his innocence. It is better in the usual case for the trial judge who suspects perjury to request an investigation. Then, if the facts warrant it, the [state] may institute prosecution for this separate and distinct crime.

*United States v. Moore,* 484 F.2d at 1287–88.

Defendant argues the judge relied on the fact of conviction to conclude that he had committed perjury; that unlike the judge in *Grayson*, the trial judge did not make an independent evaluation of defendant's testimony before concluding that he had given false material testimony. At the sentencing hearing, the court stated, "the jury found that he lied * * * we don't have to make that decision, the jury did that * * * those aggravating circumstances are * * * the lying under oath that the jury's already found". Our supreme court in *State v. Segotta,* recognized that a sentencing judge in determining whether or not to mitigate or aggravate a defendant's sentence may properly consider, among others, defendant's "character, past conduct, age, health and any events surrounding the crime, pattern of conduct * * *, and the possibility of rehabilitation." The supreme court in *Segotta,* however, noted that "Section 31–18–15.1 requires the trial court to issue a brief statement of reasons for the alteration of the sentence, and must include these findings in the record * * * for appellate review."

*Grayson* was careful to point out that its decision only "reaffirm[ed] the authority of a sentencing judge to evaluate carefully a defendant's testimony on the stand [and] determine * * * whether that testimony contained willful and material falsehoods." *Id.* 438 U.S. at 55, 98 S.Ct. at 2618. Here, the record is not clear as to whether the judge made an independent evaluation of defendant's testimony.

The verdict of guilty merely established that the jury did not believe defendant's testimony. It did not establish that defendant had willfully lied on a material fact. Only willful and material falsehoods sufficiently bear on a defendant's character to justify aggravation. *Commonwealth v. Thurmond.* In the instant case, there is no indication in the record whether the judge determined that defendant willfully offered false testimony on a material fact.

Finally, aside from the suspected perjury in the present case, the record is silent as to whether or not the judge considered other factors bearing on defendant's char-

acter and prospects for rehabilitation. *United States v. Grayson.* Here, the judgment entered by the court listed two aggravating circumstances, *i.e.,* the suspected perjury and defendant's refusal to admit wrongdoing. As both the state and defendant point out in their briefs, however, the two reasons are so intertwined it is difficult to separate which was the primary one or whether they are different. As such, if the defendant's refusal to admit guilt is based on the suspected perjury, the trial court clearly considered the suspected perjury as the only factor for aggravating the sentence. This is impermissible. *See Strachan v. State; People v. Redmond; People v. Wilson.* Moreover, to expect an admission of guilt at the sentencing hearing, would infringe on defendant's fifth amendment right not to incriminate himself and jeopardize any post-conviction relief he may seek. *See State v. Zamora,* 84 N.M. 245, 501 P.2d 689 (Ct.App.1972) (fifth amendment privilege can be asserted whenever there is a reasonable cause to apprehend danger of a legal detriment); *see also Bushnell v. State,* 97 Nev. 591, 637 P.2d 529 (1981) (a court may not impose a harsher sentence based upon a defendant's exercise of his constitutional rights); *Fox v. State.* In any case, the record does not indicate whether the suspected perjury was considered together with other existing factors which may bear upon defendant's character, prospects for rehabilitation, or other relevant matters. *United States v. Grayson.*

We hold that the trial court's statement of reasons for aggravation of defendant's sentence was insufficient to permit meaningful appellate review and the cause should be remanded for resentencing and specific articulation of the reasons for mitigating or aggravating defendant's sentence based upon the court's independent assessment of the factors enumerated in *Segotta,* or other pertinent factors. *See generally* ABA *Standards Relating to a Appellate Review of Sentences,* Standard 20–2.3.

## SUMMARY ISSUES

Defendant argues that he should be granted a new trial because of newly dis-

covered evidence: the concealed bias of one of the state's key witnesses. The record does not show that defendant moved for a new trial below. Therefore, this issue is not properly before this court. SCRA 1986, 12–216.

Defendant's fourth issue is raised by a motion to amend the docketing statement pursuant to *Franklin*. Defendant asserts that the trial judge "rushed" the jury during its deliberations, so as to deprive him of a fair trial. We deny the motion to amend as the issue defendant seeks to raise is unsupported by the record and, therefore, without merit. *State v. Rael*, 100 N.M. 193, 668 P.2d 309 (Ct.App.1983).

CONCLUSION

Defendant's conviction is affirmed; we remand for resentencing consistent with this opinion.

IT IS SO ORDERED.

DONNELLY, J., concurs.

HARTZ, J., concurs in part, dissents in part.

HARTZ, Judge (specially concurring in part and dissenting in part).

I concur in the affirmance of the conviction and join in the portions of the majority's opinion addressing defendant's challenges to his conviction. I respectfully dissent, however, with respect to the remand for resentencing.

I agree with the thrust of the majority's discussion of the potential problems with enhancing a defendant's sentence because of perjury during trial. In particular, I agree that it is impermissible to enhance a sentence solely "for the purpose of saving the Government the burden of bringing a separate and subsequent perjury prosecution." *United States v. Grayson*, 438 U.S. 41, 53, 98 S.Ct. 2610, 2617, 57 L.Ed.2d 582 (1978). I also agree that it would be impermissible to infer perjury solely from the defendant's having testified and been convicted.

On the other hand, I do not agree fully with the majority's discussion of its three "safeguards." With respect to the first safeguard, the majority indicates that the sentencing court must articulate factors relating to rehabilitation in addition to the defendant's perjury. *Grayson* does not impose such a requirement; nothing in that opinion suggests that the sentencing judge noted any additional factors relating to rehabilitation. It should suffice that perjury is considered only insofar as it helps assess the defendant's prospects for rehabilitation. As for the second safeguard, I think it should be permissible for a sentencing judge who was not present at the defendant's trial to consider the defendant's perjury during trial. There is nothing unusual about a sentencing judge considering a defendant's misconduct even though the judge did not personally observe it. The sentencing judge should be permitted to consider reliable sources of information other than his or her own senses. With respect to the third safeguard, a witness, including a defendant, may commit perjury by testifying to lack of memory as well as by testifying to a specific event. Therefore, I would not impose, as the majority apparently does, a strict requirement that the sentencing judge could not enhance a sentence because of defendant's testifying to a failed or uncertain memory. Neither *Grayson*, nor due process, nor public policy requires the rigid safeguards set by the majority.

In my view the trial judge acted within his discretion in enhancing defendant's sentence. A district court's findings in support of an enhanced sentence need not be in writing. *See State v. Bernal*, 106 N.M. 117, 119, 739 P.2d 986, 988 (Ct.App.1987). At sentencing, the judge said the following:

> You've impressed me with the fact that you probably did just about anything you could get away with the last eleven years. Lying and stealing and cheating and breaking the law has just been a habit of yours for eleven years. Now you're going to have to break the habit or you're going to have to probably spend a lot of the rest of your life behind bars. * * *
>
> I certainly agree with you on one thing. Putting you in the penitentiary is not going to help you any. It's not going

to help your alcohol problem. It's not going to help restitution. It's not going to get you rehabilitated, because you certainly need rehabilitation. You need help. You need to get out there on your own two feet and learn how to be a useful citizen.

* * * I'm going to take a chance with you, but I'm not going to let you get too far away. I'm going to have * * * one arm on the rope that we turn you loose with. * * * What I'm going to do is, sentence you to the New Mexico State Penitentiary for a year and a half and I'm going to find aggravating circumstances and add six months onto it, which is two years, that's the maximum I can give you under the jury verdict. * * * Those aggravating circumstances are: your refusal up to this point to admit that you've done anything wrong, the lying under oath that the jury's already found, * * * your consistent refusal to admit any wrongdoing. * * * Then I'm going to suspend that jail sentence, with the exception of what you've already spent in jail * * * and I'm going to put you on probation for five years which is the maximum time I can put you on probation. * * *

If you violate any part of [the conditions of probation], you'd be subject to having your probation revoked and sent to the New Mexico State Penitentiary. * * * You're not going to take advantage of the leniency of the Court. Because that's what I consider leniency, in the form of trying to help you, maybe, as a last chance of keeping you out of the penitentiary for a life time. Because that's where you're headed. You know that, don't you? * * *

It's all back on your shoulders. It's up to Darrin James.

The trial court then enhanced defendant's sentence of imprisonment by six months for a total term of two years, but *suspended* all but the twelve days already served and ordered that defendant be placed on probation for a period of five years.

The trial judge considered defendant's perjury at trial for precisely the proper purpose. He viewed defendant's trial testimony as simply the latest example of an eleven-year history of "lying and stealing and cheating and breaking the law"—engaging in wrongdoing and then refusing to accept any responsibility. The trial judge thought that defendant needed a lengthy period of probation in order to rehabilitate himself but felt that defendant required a stiff sentence hanging over his head to induce him to straighten himself out. The enhancement of the sentence was clearly for rehabilitative purposes. If the judge had intended to *punish* defendant for perjury, I doubt that he would have suspended the sentence.

My view is not changed by the trial judge's statements referring to the jury's decision that defendant had lied, including his statement (made immediately before sentencing, in response to the prosecutor's expressing disagreement with defense counsel's characterization of defendant's testimony): "The jury found that he lied. I mean twelve people sitting up there listening to the evidence found that he lied. I don't know what the big problem is. Obviously he lied. They found him guilty. We don't have to make that decision, the jury did that." First, I see no reason for the sentencing judge not to rely on a jury's determination that the defendant lied at trial, at least so long as the circumstances of the trial make clear that to reach its verdict the jury must have decided that the defendant was lying. *See Commonwealth v. Thurmond*, 268 Pa.Super. 283, 288–89, 407 A.2d 1357, 1360 (1979) (given nature of testimony, verdict established that defendant had lied). Second, even if reliance on the jury verdict is improper, I doubt that the trial judge so relied. Because the sentencing judge himself presided over the trial, I would find it remarkable for him to have relied on the jury's verdict if he did not himself think that defendant had lied under oath. The thrust of his remarks at sentencing compels the conclusion that the judge personally believed that defendant had lied and felt reinforced in that belief by the verdict of the jury, which, given the nature of defendant's testimony, necessarily implied that the jury also believed that

defendant had committed perjury. Third, I would hold that defendant waived any claim that the sentencing judge improperly failed to make his own determination of whether defendant committed perjury. Defense counsel made no objection at sentencing to the judge's reference to the jury's having decided that defendant committed perjury. A timely objection could have enabled the judge to cure any problem by stating that he personally found that defendant had perjured himself. In the absence of a timely objection, I would hold that the issue was not preserved for appeal.