Argued May 20, affirmed June 13, reconsideration denied July 20, petition for review denied September 27, 1977

STATE OF OREGON, *Respondent,*
*v.*
STEPHEN BRUCE COFFIN, *Appellant.*
(No. C 76-09-12686, CA 7449)

565 P2d 391

Stephen Kanter, Portland, argued the cause and filed the brief for appellant.

Kevin L. Mannix, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Thornton, Presiding Judge, and Tanzer and Richardson, Judges.

THORNTON, P. J.

## THORNTON, P. J.

Defendant was convicted after jury trial of burglary in the first degree. He appeals, contending that the trial court erred:

(1) in denying defendant's motion to dismiss for destruction of evidence;

(2) (a) in refusing to grant a mistrial after inquiring in the presence of the jury if defendant would accept oral challenges;

(b) in refusing to grant a mistrial after evidence of defendant's prior arrest came to the attention of the jury;

(c) in denying a mistrial after the prosecution allegedly commented on the defendant's failure to testify;

(d) in overruling defendant's objection to the prosecutor's closing argument;

(3) in refusing to give a requested lesser-included instruction on criminal trespass in the first degree; and

(4) in denying defendant's motion to suppress identification on the ground that the show-up identification at the scene was unnecessarily suggestive.

The essential facts are: At about 7 a.m. on the morning of September 11, 1976, two women surprised a male intruder, later identified as the defendant, inside their Portland residence. Both victims testified that the intruder told them that he was "desperate" and repeatedly demanded all of their money. In the course of this confrontation one of the women managed to slip out of the house and summon the police. The events which followed occurred in rapid succession. A few minutes later the intruder fled, apparently empty-handed. Two city police officers, Officers Cook and Alexander, who were cruising in the area, immediately responded to the radio call. After obtaining a

brief description of the intruder, Officer Cook drove off in the patrol car to search the area for the suspect while Officer Alexander began checking the house. The women indicated that they believed entry had been gained through an unlocked window in the breakfast nook. The window area had recently been painted. Officer Alexander observed several smudged fingerprints, a partial palm print, and a fabric print all in the vicinity of the window.

Minutes later, Officer Cook arrested defendant approximately five blocks from the scene and transported him back to the residence for possible identification by the two women. Both positively identified defendant as the male intruder whom they had found in their residence earlier.

A police fingerprint expert was subsequently called to the scene to process the residence for fingerprints. The expert "lifted" a partial latent palm print from the inside of the windowsill in the breakfast nook, but found no liftable fingerprints. Subsequent comparison of the palm print with defendant's palm prints showed it was not his.

Several days later the fingerprint expert, after consulting with three other fingerprint specialists in his department, destroyed the palm print as being too fragmentary to be of value. He testified that he had "dusted" the entire area of suspected entry for prints and found no identifiable prints other than the partial palm print previously mentioned.

Defendant denied any connection with the burglary when arrested, and made a detailed exculpatory statement to the police concerning his whereabouts and activities at about the time of the crime. While defendant testified at the pretrial hearing on his several motions, he did not testify at trial.

Having examined the entire record we conclude

that none of the points assigned constituted reversible error:

■ (1) Denial of defendant's motion to dismiss on account of the destruction of the partial palm print was proper. The testimony of the expert was that this print was not sufficient to identify any possible suspect but only to exclude persons with dissimilar characteristics. Inasmuch as the expert testified that defendant had dissimilar palm characteristics and that he could not have left the partial print, this evidence was favorable to defendant.[1] We are therefore at a loss to see how the destruction of this lift could be considered as a loss of evidence favorable to defendant. *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963); *State v. Hockings,* 23 Or App 274, 542 P2d 133 (1975), Sup Ct *review denied* (1976); *cf., Hanson v. Cupp,* 5 Or App 312, 484 P2d 847 (1971).

■ (2) We find on examination that none of the four points listed in defendant's second assignment of error has any real substance. The disclosure of defendant's prior arrest record was elicited inadvertently by defendant's own counsel during defense counsel's cross-examination of a police witness on an unrelated point. Moreover, the reference was so oblique as to be of no significance in the trial. *Cf., State v. Hockings, supra.*

■ (3) Defendant's request for a lesser-included instruction on criminal trespass was properly refused.

It is of course correct that criminal trespass may

---

[1] The actual identity of the person who left the partial handprint, and when it occurred, was never established. There was evidence from which it could reasonably have been inferred that any number of persons could have made it, including a member of the household or an invitee. For example, before the police arrived the women summoned a passing milkman who aided them in closing the window in question. The fingerprint expert testified that the police had been unsuccessful in contacting the milkman to obtain his hand prints for comparison. As previously pointed out, however, the same expert also testified that the unidentified print contained insufficient points of identification to connect it with a particular person and was only usable to possibly rule out a particular person.

under proper circumstances be a lesser-included offense of the crime of burglary. *See, State v. Washington,* 273 Or 829, 543 P2d 1058 (1975). The applicable rule relative to lesser-included offense instructions was stated in *Washington,* as follows:

"The single limitation on the right of either the prosecution or the defendant to request lesser included offense instructions under these statutes is that there must be evidence, or an inference which can be drawn from the evidence, which supports the requested instruction so that the jury could rationally and consistently find the defendant guilty of the lesser offense and innocent of the greater. *See State v. Williams,* 270 Or 152, 526 P2d 1384 (1974), and cases cited therein." 273 Or at 836.

Applying the above rule to the case at bar, the state's evidence of the breaking and entering with intent to commit a crime was uncontradicted. There was no evidence in the record from which the jury could rationally and consistently find that defendant was not guilty of burglary but guilty of criminal trespass. Therefore there was no legal basis for the instruction. *See, State v. Washington, supra; State v. Nye,* 273 Or 825, 543 P2d 1041 (1975).

Further, the requested instruction would also have been totally inconsistent with defendant's own theory of the case, which essentially was that of alibi. When arrested, defendant denied having been in the residence and made a detailed exculpatory statement to police. Defendant cannot have his cake and eat it too.

In summary, under the evidence defendant was either guilty of burglary in the first degree or he was guilty of no crime whatsoever.

■ (4) Lastly, the show-up identification at the scene when the officer who apprehended defendant brought him back to the victims' residence for identification was perfectly proper in all respects. As this court has repeatedly held:

"The *Wade-Gilbert* requirements do not apply to

[ 824 ]

on-the-scene investigatory confrontations of a suspect and witnesses conducted shortly after the crime. * * *" *State v. Madden,* 1 Or App 242, 461 P2d 834 (1969).

Affirmed.