845 P.2d 819

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**David RICHARDSON, Defendant–Appellant.**

**No. 13128.**

Court of Appeals of New Mexico.

Oct. 7, 1992.

Certiorari Denied Dec. 30, 1992.

Tom Udall, Atty. Gen., Joel K. Jacobsen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Susan Gibbs, Santa Fe, for defendant-appellant.

## OPINION

**BIVINS, Judge.**

Convicted on two counts of embezzlement, Defendant appeals raising one issue: denial of effective assistance of counsel. Defendant has abandoned all other issues originally raised in the docketing statement. *See State v. Fish*, 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App.), *cert. denied*, 102 N.M. 734, 700 P.2d 197 (1985). We hold that Defendant has established a prima facie case of ineffective assistance of counsel on one of his claims and, therefore, remand to the district court for an evidentiary hearing.

The State charged Defendant with five counts of embezzlement under NMSA 1978, § 30–16–8 (Repl.Pamp.1984). The State alleged that Defendant, in his position as "Ramp" Manager for Federal Express at the Albuquerque International Airport, unlawfully took packages containing rings, a watch, and ammunition. Because there was no direct evidence linking Defendant with the taking of the missing packages, the State relied primarily on circumstantial evidence, including evidence that Defendant had a history of pawning goods (knowledge), financial problems (motive), and control over the ramp operations (opportunity). The prosecutor also offered testimony that a ring pawned by Defendant matched one of the missing Federal Express rings, and that Defendant had sold ammunition of the type that was missing. The State's theory was that Defendant, though well-paid, was nonetheless motivated to embezzle because of financial problems brought on by cocaine use. Defense counsel's handling of certain evidence concerning Defendant's alleged drug use provides the basis for Defendant's most meritorious claims of ineffective assistance of counsel. Appellate counsel did not represent Defendant at trial.

Defendant makes numerous allegations of ineffectiveness of counsel. As we understand the brief-in-chief, these allegations can be categorized as follows: (1) defense counsel's handling of evidence of Defendant's alleged drug use; (2) cumulative errors by defense counsel. We hold

that defense counsel's asking Defendant to provide an innocent explanation for the use of a straw and razor blade, in the face of evidence that those items are frequently used as drug paraphernalia and uncontroverted stipulated testimony that residue on the items taken from Defendant's residence tested positive for cocaine, constituted prima facie ineffective assistance of counsel. We determine that the remaining claims of ineffective assistance are without merit and do not address them.

A defendant is not entitled to a new trial based on ineffective assistance of counsel unless trial counsel's representation fell below that of a reasonably competent attorney and such representation prejudiced the defense. *State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (App.1992). "The test for determining whether an accused has been afforded effective assistance of counsel is whether defense counsel exercised the skill of a reasonably competent defense attorney." *State v. Rubio*, 110 N.M. 605, 608, 798 P.2d 206, 209 (Ct.App.), *cert. denied*, 110 N.M. 641, 798 P.2d 591 (1990). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *see also Rubio*, 110 N.M. at 608, 798 P.2d at 209. The defendant on appeal bears the burden of proving both incompetence of his attorney and prejudice to his defense. *Id.* at 608, 798 P.2d at 209; *see also Strickland*, 466 U.S. at 690, 104 S.Ct. at 2065. In considering a claim of ineffective assistance of counsel, we consider the entire proceeding as a whole. *See State v. Scott*, 113 N.M. 525, 531, 828 P.2d 958, 964 (Ct. App.1991), *cert. quashed*, 113 N.M. 524, 828 P.2d 957 (1992).

■ Since evidence of drug use was necessary to establish the State's theory, Defendant contends that counsel erred in a number of ways with respect to the admission of this evidence. First, Defendant argues that counsel should have moved in

limine to exclude any testimony by Detective Haarhues (Haarhues) about a straw and razor blade seized from Defendant's residence. We note that defense counsel's pre-trial motion to suppress evidence seized from the residence was denied. We reject Defendant's contention that, although the motion lacked merit, defense counsel fell below the standard of a reasonable attorney for failing to renew the motion at trial. Absent a constitutional basis for seeking exclusion of this testimony, defense counsel would have had to rely on an evidentiary basis. Because evidence of drug use was highly probative to establish motive, Defendant's motion would not have found support under SCRA 1986, 11–403. *See State v. Litteral*, 110 N.M. 138, 142–43, 793 P.2d 268, 272–73 (1990) (evidence of drugs and drug paraphernalia relevant to establish motive). Since we are unaware of any other reason that would support exclusion of this testimony under these facts, we cannot say that defense counsel acted unreasonably. *See State v. Stenz*, 109 N.M. 536, 538, 787 P.2d 455, 457 (Ct.App.) (failure to move for suppression did not constitute ineffectiveness where admission justified), *cert. denied*, 109 N.M. 562, 787 P.2d 842 (1990).

■ Defendant's second contention has more merit. Haarhues headed up the Albuquerque Police Department investigation and executed the search warrant. On direct examination, Haarhues discussed evidence of Defendant's history of pawning and his recent sale of ammunition of the type that was missing. Haarhues also described the execution of the search warrant, noting that he, had seized copies of pawn cards, a straw, and a razor blade. He then testified that the straw and razor blade were seized because they represented drug paraphernalia. Haarhues also linked drug use and property crimes. This evidence was offered to establish the motive for the alleged embezzlement.

During cross examination of Haarhues, the following exchange took place between Haarhues and defense counsel:

DEFENSE COUNSEL: And you didn't do any kind of drug test of any kind on this straw and this razor blade, did you?

HAARHUES: Yes, I did.

DEFENSE COUNSEL: And your results were negative, weren't they?

HAARHUES: No, they were positive.

DEFENSE COUNSEL: Where are those drug results?

HAARHUES: I have them right here in this file.

DEFENSE COUNSEL: May I see them? Officer Haarhues, you are not a drug expert are you?

HAARHUES: No, sir, I am not.

DEFENSE COUNSEL: No further questions.

The defense called Defendant as its last witness. The following question was asked and answered:

THE COURT: Go ahead, [Defense Counsel].

DEFENSE COUNSEL: Thank you, Your Honor. I have one more question of Mr. Richardson. What do you use straws and razor blades for?

DEFENDANT: For my model building. I have a—it's a complete testers building kit which also includes the razor blade, knives and 15 different colors of paint, hemostats to hold the model parts together while you glue them and you can take a straw, as far as for model building, you can light it and touch it onto a model and stick it to the part on there quickly enough to hold it until you can glue it in place.

The State called as a rebuttal witness a chemist to testify about the results of the tests on the straw and the razor blade. Defense counsel objected on the basis that the results were never disclosed to him and that he would have moved to suppress the results if they had been disclosed. The prosecutor stated that she did not disclose the results of the report because the State received them late and intended to use them only for rebuttal. The trial court ruled that it would admit the report because of the above-quoted exchange be-

tween defense counsel and Haarhues.[1] Defense counsel then agreed to stipulate that the chemist would testify that the straw and razor blade tested positive for cocaine.

Defendant claims that counsel erred in questioning Haarhues about the straw and the razor blade. In hindsight, it is obvious that defense counsel should not have asked Haarhues about the cocaine test. It violated the cardinal principle that an attorney should never ask a question without knowing the answer. However, Defendant concedes on appeal that, while trial counsel "violat[ed] a basic tenet of proper cross-examination," nevertheless, the question could be "justified by surprise, nondisclosure, or inexperience of counsel." We agree. The prosecutor had a continuing duty to disclose the drug test. *See* SCRA 1986, 5–505(A) (Repl.1992). Without that disclosure, defense counsel undoubtedly assumed no test had been made on the straw or razor blade. A response confirming that fact would have cast doubt on Haarhues' testimony that the straw and razor blade were related to drug use. Defense counsel then could have offered Defendant's testimony that those items were used to build models. This would have provided a plausible explanation for their presence in Defendant's home.

But defense counsel did not stop after Haarhues' damaging testimony. Counsel put Defendant on the stand to explain his use of the straw and razor blade. We can think of no plausible strategic or tactical explanation for that question after defense counsel had seen the results of the drug test during his cross-examination of Haarhues and knew, or should have known, the prosecutor would call the chemist if Defendant tried to offer an explanation inconsistent with the positive drug test.

In *Swavola*, we expressed the concern that to remand a case for an evidentiary hearing on an ineffective assistance claim may circumvent SCRA 1986, 5–802 (Repl. 1992). *Swavola*, 114 N.M. at 475, 840 P.2d at 1241. For that reason, we limited re-

mand to those cases in which the record on appeal establishes a prima facie case of ineffective assistance. *Id.* at 475, 840 P.2d at 1241. We also said in *Swavola* that a prima facie case is not made when a plausible, rational strategy or tactic can explain the conduct of defense counsel. *Id.* at 475, 840 P.2d at 1241. Here, we hold Defendant has made a prima facie showing that defense counsel's performance in asking Defendant the question about the use of the straw and razor blade for model building fell below that of a reasonably competent defense attorney. We now turn to the question of whether this performance resulted in prejudice.

As we stated at the outset, the prosecution relied primarily on circumstantial evidence to link Defendant to the missing packages. Once it was decided that Defendant would testify in his own behalf, the outcome of the case turned largely on Defendant's credibility. It was essential for a successful defense not to place Defendant in the position of telling a blatant lie. The testimony about using the straw and razor blade for building models can reasonably be viewed as a blatant lie in the face of the drug test.

▉ We therefore hold that Defendant has made a prima facie showing that not only did defense counsel's actions fall below the standard of a reasonably competent attorney, they were also prejudicial. On remand, the trial court should hold an evidentiary hearing to determine if there was a plausible reason for offering the testimony in question. Even if the trial court finds defense counsel's performance, in asking the question, fell below acceptable standards, the inquiry does not end there. The trial court should also determine if Defendant intentionally lied in the answer he gave.

In *State v. Skjonsby*, 417 N.W.2d 818 (N.D.1987), the defendant contended on appeal that he was denied effective assistance of counsel because his attorney based his defense on self-defense when there was no

---

1. Appellate counsel does not base the ineffective assistance claim on trial counsel's failure to make this objection during Haarhues' testimo-

ny. *See* SCRA 1986, 5–505(B) (Repl.1992) (setting out options available to court when a party fails to disclose).

evidence to support that theory. *Id.* at 824. The court said that:

> It would be incongruous to grant a new trial to Skjonsby based upon allegations of ineffective assistance of counsel which have their underpinnings in Skjonsby's knowing, willing, and blatant perjury. It must be remembered that the ultimate focus of an inquiry into the alleged ineffectiveness of counsel must be upon the fundamental fairness of the challenged proceeding. It borders on the preposterous for Skjonsby to level an attack upon the fairness of a proceeding based upon his own perjury.

*Id.* at 829 (citations omitted). We think it would be preposterous here to allow Defendant a new trial if the trial court determines that he either insisted upon or willingly participated in testifying about using the straw and razor blade for building models, and the court also determines that this testimony was a lie.

 Further, if defense counsel pursued a defense Defendant insisted upon, counsel's performance in following that directive should not necessarily result in a new trial, even if found below the standards for effective assistance of counsel. *See United States v. Masat*, 896 F.2d 88, 92–93 (5th Cir.1990) (holding that following defendant's wishes was not ineffective assistance of counsel). As the *Masat* court noted: "Cutting through the smoke, it is apparent that we are being asked to permit a defendant to avoid conviction on the ground that his lawyer did exactly what he asked him to do. That argument answers itself." *Id.* at 92.

Defendant argues that in the event of remand the standard for judging a claim of ineffective assistance should be strictly objective. Citing *State v. Crislip*, 109 N.M. 351, 785 P.2d 262 (Ct.App.), *cert. denied*, 109 N.M. 262, 784 P.2d 1005 (1989), Defendant contends that any inquiry into the subjective motivations for the acts or omissions of a particular attorney would be completely irrelevant to this standard. We do not read *Crislip* to preclude full inquiry. In fact, the special concurrence in *Crislip* proposed for the first time remand as a

proper remedy, suggesting that ineffective assistance usually can be reached only after an adversarial proceeding exploring the reasons for the action or inaction of defense counsel. *Crislip*, 109 N.M. at 358, 785 P.2d at 269 (Hartz, J., specially concurring). We approved that proposed disposition in *Stenz* and adopted remand in appropriate cases. *Stenz*, 109 N.M. at 539, 787 P.2d at 458. We reject Defendant's arguments for a narrow inquiry on remand.

We recognize that an evidentiary hearing may require inquiry into confidential communications between defense counsel and his client. We hold that by raising the issue on appeal Defendant waives any claim to confidentiality. *See* SCRA 1986, 11–503(D)(3).

We remand for an evidentiary hearing consistent with this opinion.

IT IS SO ORDERED.

ALARID, C.J., and BLACK, J., concur.