868 P.2d 656

STATE of New Mexico,
Plaintiff–Appellee,

v.

Charles G. WILSON, Defendant–
Appellant.

No. 12634.

Court of Appeals of New Mexico.

June 10, 1993.

Certiorari Granted Aug. 30, 1993.

Tom Udall, Atty. Gen., Max W. Shepherd, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

MINZNER, Chief Judge.

Defendant appeals his convictions for kidnapping and four counts of criminal sexual penetration in the second degree (CSP II). Defendant and Complainant were friends and former co-workers at the time of the incident from which this case arose.

According to Complainant's testimony, in the early morning hours of January 10, 1990, Defendant appeared at her door claiming to

be drunk and experiencing car trouble. After she let him into her house, he verbally threatened her, grabbed her arms, and forced her into a bedroom and to undress. In the bedroom he secured her hands with handcuffs, displayed a gun, knife, and rope, and threatened to use the gun if she did not do what he wanted. He then compelled her to engage in fellatio and, after repositioning her with the handcuffs and rope, in sexual as well as anal intercourse. He subsequently moved her into the bathroom, requested a wash cloth, wiped himself, and again compelled her to perform fellatio. Afterward, he became remorseful; apparently in sympathy, she said that she would not report the incident if he sought professional help for his problems, and he left the gun with her when he left her house. She reported the incident five days later when she came to the conclusion that he had lied about seeking professional help.

Defendant's defense theory was alibi: his wife testified that he was in bed asleep with her at the time of the alleged incident. They also presented evidence to show that the gun was not Defendant's, but rather belonged to Complainant. Defendant suggested that Complainant fabricated the charges because she was angry with him for breaking off an affair with her and also for not repaying a loan she had made to him.

The jury returned verdicts of guilty on one count of kidnapping and four counts of CSP II. At sentencing, the trial court imposed nine-year sentences for each conviction and added three years to each sentence due to aggravating circumstances, which included harm to Complainant, harm to Defendant's family, and Defendant's lack of remorse. *See* NMSA 1978, § 31–18–15.1 (Repl.Pamp.1990) (alteration of basic sentence for mitigating or aggravating circumstances). The trial court added one year on the basis of a prior Colorado felony conviction and one year for use of a firearm. *See* NMSA 1978, § 31–18–17(B) (Repl.Pamp.1990) (alteration of basic sentence; habitual offender); NMSA 1978, § 31–18–16(A) (Repl.Pamp.1990) (alteration of basic sentence; use of firearm).

Defendant raises twelve issues on appeal, seven of which deal with matters at trial and the rest of which challenge the validity of Defendant's sentence. The trial issues include Defendant's right to have the jury instructed on the lesser-included offense of criminal sexual penetration in the third degree (CSP III), the timeliness of his objection to the prosecution's use of peremptory challenges, and whether he received effective assistance of counsel. Three of the trial issues concern evidentiary rulings excluding evidence Defendant wished to introduce. We address those issues under one heading. Defendant also challenges the sufficiency of the evidence to support his convictions. The sentencing issues include the propriety of the factors on which the trial court relied in aggravating and enhancing Defendant's sentences and the sufficiency of the evidence to support multiple counts of CSP II.

We affirm Defendant's convictions; we vacate Defendant's sentence and remand for resentencing in accordance with this opinion. We address below each of the issues Defendant raises. We first address and answer summarily Defendant's contentions that his convictions are not supported by substantial evidence and that neither the multiple CSP II sentences nor the increased sentences under Sections 31–18–16(A) and –17(B) were proper.

## I. *ISSUES ADDRESSED SUMMARILY*

We are aware of conflicts in the evidence and the conflicting inferences the jury was entitled to draw. Nevertheless, we must resolve those inferences and conflicts in the light most favorable to the judgment. *State v. Lankford*, 92 N.M. 1, 2, 582 P.2d 378, 379 (1978). "It is for the trier of fact to determine the weight and sufficiency of the evidence, including all reasonable inferences." *State v. Vialpando*, 93 N.M. 289, 292, 599 P.2d 1086, 1089 (Ct.App.), *cert. denied*, 93 N.M. 172, 598 P.2d 215 (1979). Based on Complainant's testimony, *see* NMSA 1978, §§ 30–4–1(A)(3) & 30–9–11(B)(5) (Repl. Pamp.1984), we hold that Defendant's convictions are supported by sufficient evidence. *See generally State v. Duran*, 107 N.M. 603, 605, 762 P.2d 890, 892 (1988) (discussing test for sufficiency of evidence to sustain guilty verdict).

Defendant also contends that the facts in the present case establish one continuous offense, and that his sentences are contrary to the prohibition against multiple punishments for a single offense. This argument, based on his right to be free from double jeopardy, raises an issue of legislative intent. There is controlling Supreme Court precedent.

The New Mexico Supreme Court in *Herron v. State*, 111 N.M. 357, 805 P.2d 624 (1991), recently detailed the factors to be used to determine whether multiple acts committed in close temporal proximity constitute a continuous offense or separate and distinct offenses under Section 30-9-11. Under *Herron*, penetrations of separate orifices with the same object constitute separate offenses. Therefore, the acts of anal intercourse, sexual intercourse, and at least one instance of fellatio constitute separate offenses under *Herron*. To determine if the second instance is a separate offense we refer to the factors set out in *Herron* for making such a determination. The second instance of fellatio occurred only a short time after the anal penetration. However, Defendant had moved the victim from the bathroom to the bedroom before forcing her to engage in fellatio a second time. In addition, there had been an intervening event between the anal intercourse and the second act of fellatio. We conclude that the second act of fellatio was a separate and distinct act under *Herron*. Therefore, we hold that there was no double jeopardy violation.

Defendant also challenges the firearm enhancement of his sentence. We recently answered a similar challenge based on double jeopardy in *State v. Charlton*, 115 N.M. 35, 38-41, 846 P.2d 341, 344-47 (Ct.App.1992), *cert. denied*, 114 N.M. 577, 844 P.2d 827 (1993). Based on that opinion, we conclude that Defendant's challenge to the firearm enhancement of his sentence lacks merit.

Finally, Defendant argues that a habitual offender enhancement was improperly imposed because the Colorado felony for which he was previously convicted is not a felony in New Mexico. *See* § 31-18-17(A)(2)(c); *State v. Knight*, 75 N.M. 197, 199, 402 P.2d 380, 382 (1965). Whether or not the Colorado felony is a felony in New Mexico, the felony conviction may be used if it was punishable by imprisonment of more than one year. *State v. Mankiller*, 104 N.M. 461, 469, 722 P.2d 1183, 1191 (Ct.App.), *cert. denied*, 104 N.M. 378, 721 P.2d 1309 (1986). Defendant admitted that he was convicted in Colorado of the class five felony of possession of a dangerous weapon, and the State introduced the judgment and sentence of this conviction. Thus, the State presented a prima facie case for a habitual offender enhancement. *Id.* Moreover, the trial court noted that a felony by definition is punishable by more than one year, and indeed, a fifth class felony conviction was punishable by more than one year of imprisonment at the time of Defendant's prior conviction. Colo.Rev.Stat.Ann. § 18-1-105(1)(a)(II) (West 1986). Accordingly, it was proper to impose a habitual offender enhancement.

We next address the trial court's ruling on denying an instruction on CSP III. We then address the remaining trial issues and the question of whether Defendant's sentences were aggravated on a proper basis.

## II.  *INSTRUCTION ON CSP III*

A defendant is entitled to a lesser-included offense instruction only if there is evidence tending to establish the lesser offense, and there must be some view of the evidence tending to establish that the lesser offense is the highest degree of crime committed. *State v. Fish*, 102 N.M. 775, 779, 701 P.2d 374, 378 (Ct.App.), *cert. denied*, 102 N.M. 734, 700 P.2d 197 (1985). We agree with the trial court's analysis of this issue, which was that the evidence did not support the instruction.

Defendant tendered a correct CSP III instruction at trial, arguing the evidence in support of the instruction consisted of Complainant's testimony that he set the gun down before the actual sexual penetrations commenced. That argument would not support the giving of a CSP III instruction. However, based on our review of the record, we believe that the trial court rejected the instruction on another ground, which is the issue raised on appeal. We next address the

issue raised on appeal. *See State v. Corneau,* 109 N.M. 81, 88, 781 P.2d 1159, 1166 (Ct.App.) (addressing comparable issue despite tender that may have been unclear or equivocal), *certs. denied,* 108 N.M. 668, 777 P.2d 907 (1989).

The trial court was entitled to refuse Defendant's instruction on CSP III if there was no view of the evidence tending to establish the lesser offense as the highest degree of the crime committed. *Fish,* 102 N.M. at 779, 701 P.2d at 378. Defendant asks us to allow the jury to select portions of Complainant's testimony, portions of Defendant's testimony, and base a verdict on the composite. That is to say, to conclude that CSP III was the highest degree of crime committed, the jury would have to believe Complainant's allegation that an attack occurred while rejecting her contention that a gun was involved, and to reject Defendant's alibi defense while believing Defendant's contention that the gun belonged to Complainant. We believe the fragmentation of the evidence that would have to occur for the jury to conclude that CSP III had been committed justified the trial court's refusal of the lesser-included offense instruction. *See State v. Manus,* 93 N.M. 95, 100–01, 597 P.2d 280, 285–86 (1979), *overruled on other grounds by Sells v. State,* 98 N.M. 786, 653 P.2d 162 (1982); *State v. Marquez,* 96 N.M. 746, 748–49, 634 P.2d 1298, 1300–01 (Ct.App.1981).

Because Defendant offered the defense of an alibi, he was not entitled to a lesser-included offense instruction on the ground that the jury might have rejected Complainant's testimony regarding the gun. *See State v. Coffin,* 565 P.2d 391, 393–94 (Or.Ct.App. 1977); *State v. Cameron,* 216 Kan. 644, 533 P.2d 1255, 1262 (1975). In *Corneau,* the jury was entitled to rely on the victim's testimony regarding the use of force, but accept the defendant's theory that the force used was insufficient to establish false imprisonment as an independent felony. We think *Corneau* raised a very different factual question than that involved in this case. In *Corneau,* there was a factual issue the jury had to resolve, which was whether the victim's testimony necessarily established the greater offense. In this case, there was no comparable factual

issue. *Cf. State v. Thayer,* 32 Or.App. 193, 573 P.2d 758, 760 (1978) (qualifying language in *Coffin* and refusing to apply it in a case where state of mind is element and state's own evidence permitted competing inference).

■ We recognize that a requested instruction must be given if it is supported by evidence, even if the instruction is contrary to Defendant's initial theory of the case. *See State v. Privett,* 104 N.M. 79, 81, 717 P.2d 55, 57 (1986); *cf. State v. Benavidez,* 94 N.M. 706, 708, 616 P.2d 419, 421 (1980) (the defendant was entitled to an instruction on voluntary manslaughter, even though he denied ever having shot at the victim), *overruled on other grounds by Sells v. State,* 98 N.M. 786, 653 P.2d 162 (1982). However, there must be some evidence other than that obtained by taking portions of the victim's and portions of the defendant's testimony to support the lesser-included offense instruction. In *Fish,* the defendant admitted being present and engaging in sex with the victim; no knife was found. When there is other evidence, then the risk of impermissible distortion is eliminated. In *Benavidez,* another witness testified about the defendant's gesture with his arm, 94 N.M. at 708, 616 P.2d at 421, and in *Privett,* there was "considerable evidence relating to Mr. Privett's long-term alcoholism and his alcoholic condition during the hours surrounding his wife's death," 104 N.M. at 81, 717 P.2d at 57, from law enforcement officers. *Thayer* is in accord with *Privett.* 573 P.2d at 759–60.

Judge Chavez suggests in his dissent that there was "other evidence in the case to corroborate Defendant's testimony about the gun—his wife's testimony and the lack of fingerprint evidence." 117 N.M. at 21, 868 P.2d at 666. With respect, we do not believe this evidence eliminates the risk of impermissible distortion. Defendant's evidence concerning the earlier possession of the gun does not detract from Complainant's testimony concerning the use of the gun on the night in question. Defendant's wife did not testify to the location of the gun on the night in question, and we do not believe the evidence that there were no prints on the gun is analogous to the missing knife in *Fish.* De-

fendant was either innocent of any crime or guilty of CSP II.

III. *USE OF PEREMPTORY CHALLENGES*

■ Defendant asserts that the State's use of its peremptory challenges during jury selection violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Sixth Amendment to the United States Constitution, and the New Mexico Constitution. However, Defendant made his objection after the venire panel had been dismissed and the petit jury sworn and preliminarily instructed. The trial judge denied his motion to dismiss and also stated that the objection was untimely because it was too late to cure any alleged error. We agree.

It may be that Defendant only raised an equal protection challenge below. *See State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986) (defendant must make a timely and specific objection that apprises the trial court of the nature of the claimed error); *Reynolds v. City of Little Rock*, 893 F.2d 1004, 1009 (8th Cir.1990) (if *Batson*-type objection was clear and timely enough for lower court to address merits of claim, defendant's appeal not barred because state contends objection was equivocal and untimely). Nevertheless, we believe the objection Defendant made was untimely, whether it was based on the Equal Protection Clause, the Sixth Amendment, or the state constitutional provisions.

■ Generally, a challenge to jury selection must be made before the jury is sworn. The Supreme Court's discussion of remedies in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), suggests this approach. The Court noted two options: discharge the venire and select a new jury from a panel not previously associated with the case, or disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire. *Id.* at 99–100 n. 24, 106 S.Ct. at 1724–25 n. 24. Both options assume that the issue will be decided before the jury is sworn. *See also* the analysis in *United States v. Cashwell*, 950 F.2d 699, 704 (11th Cir.1992); *Unit-*

*ed States v. Dobynes*, 905 F.2d 1192, 1196 (8th Cir.), *cert. denied*, 498 U.S. 877, 111 S.Ct. 206, 112 L.Ed.2d 167 (1990). *But see Reynolds*, 893 F.2d at 1009 (*Batson* issue preserved in civil case where trial judge ruled on merits even though objection raised after jury was sworn); *United States v. Thompson*, 827 F.2d 1254, 1257 (9th Cir. 1987) (considering *Batson* claim timely made after jury sworn because there was no prejudice to the government and defendant could be retried).

State cases have taken a similar approach. As the Missouri courts have reasoned:

"There simply is no justification for defense counsel to wait until the remaining venirepersons are discharged to challenge the state's peremptory strikes. If defense counsel does wait until the venire panel is discharged and the challenge is sustained, then the jury selection process must start anew, and an additional venire panel must be called. This simply delays justice, and, in those jurisdictions where an additional venire is not readily available, the delay can be substantial."

*State v. Cummings*, 838 S.W.2d 4, 6 (Mo.Ct. App.1992) (quoting *State v. Smith*, 791 S.W.2d 744, 747 (Mo.Ct.App.1990)). Accordingly, the objection should be made before the jury is sworn. *See Ross v. State*, 581 So.2d 495, 496 (Ala.1991); *State v. Harris*, 157 Ariz. 35, 754 P.2d 1139, 1140 (1988) (en banc); *Pacee v. State*, 306 Ark. 563, 816 S.W.2d 856, 859 (1991); *State v. Castillo*, 486 So.2d 565, 565 (Fla.1986); *Greene v. State*, 260 Ga. 472, 396 S.E.2d 901, 902 (1990); *People v. Wright*, 218 Ill.App.3d 764, 161 Ill.Dec. 444, 578 N.E.2d 1090, 1098 (1991); *State v. Potter*, 591 So.2d 1166, 1169 (La. 1991) (requiring an objection "during the jury selection process itself"); *Stanley v. State*, 313 Md. 50, 542 A.2d 1267, 1276 (1988); *People v. Williams*, 174 Mich.App. 132, 435 N.W.2d 469, 472 (Mich.Ct.App.1989); *Thomas v. State*, 517 So.2d 1285, 1286–88 (Miss. 1987); *People v. Harris*, 542 N.Y.S.2d 411, 412 (App.Div.1989); *State v. Jones*, 293 S.C. 54, 358 S.E.2d 701, 704 (1987). A Texas statute requires the objection to be made before the jury is sworn. *See Taylor v. State*, 825 S.W.2d 212, 214 (Tex.Ct.App.1992).

We may review issues raised for the first time on appeal, in our discretion, if they involve questions of fundamental error. SCRA 1986, 12–216(B)(2) (Repl.1992); *cf. State v. English*, 795 S.W.2d 610, 612 (Mo.Ct. App.1990) (defendant's *Batson* objection ruled untimely where made after jury panel had been discharged, but court reviewed claim under plain error doctrine). If there is substantial evidence to support the verdict, however, we will not resort to fundamental error. *State v. Rodriguez*, 81 N.M. 503, 505, 469 P.2d 148, 150 (1970). As indicated above, there is substantial evidence to support Defendant's convictions. We see no other basis for invoking the concept of fundamental error. *See State v. Orosco*, 113 N.M. 780, 784, 833 P.2d 1146, 1150 (1992) (rule of fundamental error applies only if there has been miscarriage of justice, if question of guilt is so doubtful that it would shock conscience to permit conviction to stand, or if substantial justice has not been done). We thus decline to address Defendant's equal protection, Sixth Amendment, and New Mexico constitutional claims.

## IV. *EXCLUSION OF EVIDENCE*

Defendant first argues that it was reversible error for the trial court to prohibit his six-year-old son from testifying that he had seen Complainant performing fellatio on Defendant on a prior occasion. Defendant argues that the testimony was relevant because it corroborated his claim that he and Complainant had an affair and demonstrated her motive to lie. The State agrees that the testimony is relevant. However, the State argues that the evidence was nevertheless properly excluded because it was cumulative and too prejudicial. We agree.

As the State points out, Defendant cross-examined Complainant regarding the alleged sexual affair. In addition, the trial court allowed Defendant and his wife to testify regarding an affair between Defendant and Complainant. Therefore, the trial court could properly exclude the evidence as cumulative. *See State v. Lujan*, 94 N.M. 232, 233, 608 P.2d 1114, 1115 (1980), *overruled on other grounds by Sells v. State*, 98 N.M. 786, 653 P.2d 162 (1982). Further, determining whether the prejudicial impact of evidence outweighs its probative value is left to the discretion of the trial court. *State v. Martinez*, 94 N.M. 50, 52, 607 P.2d 137, 139 (Ct.App.1980). Given the inflammatory nature of the testimony and its limited probative value, we cannot say that the trial court abused its discretion in excluding the testimony. *See* SCRA 1986, 11–403; *see also* SCRA 1986, 11–413(A) (evidence of Complainant's past sexual conduct "shall not be admitted unless, and only to the extent that the court finds, that evidence of the victim's past sexual conduct is material and relevant to the case and that its inflammatory or prejudicial nature does not outweigh its probative value").

Defendant also complains about the trial court's refusal to allow Defendant to present the testimony of some of his family members regarding several guns Defendant claimed they received as gifts. On cross-examination, the prosecutor had asked Defendant's wife about State's Exhibit 8, the gun that she testified Complainant had offered to sell to Defendant prior to January 10, 1990. Specifically, the prosecutor asked Defendant's wife if she could identify the caliber of the gun. The prosecutor also asked her if she had purchased a number of guns in recent years. After she answered that she really didn't know much about guns, the prosecutor asked her whether she had bought the guns for Defendant. She denied that she had bought the guns for Defendant and testified that she had purchased them as gifts for her in-laws. On direct examination, Defendant testified in detail regarding which relative had received each of the guns his wife had purchased. Thus, the record indicates that the prosecutor asked Defendant's wife about her gun purchases in an effort to impeach her credibility on the issue of whether she recognized State's Exhibit 8, as well as to impeach her general character for honesty, and that Defendant wished to rehabilitate her by introducing additional testimony by members of Defendant's family that his wife had indeed given them the guns she had purchased.

Defendant argues that the trial court excluded his additional witnesses because they were not included on his witness list. *See*

*McCarty v. State*, 107 N.M. 651, 655, 763 P.2d 360, 364 (1988). We do not think the record supports this claim. Rather, the trial court appears to have excluded the testimony on at least one other basis, which was that the anticipated testimony was not important to the central issues in the case. We conclude that the court properly exercised its discretion. *See* SCRA 11–403 ("relevant ... evidence may be excluded if its probative value is substantially outweighed by the danger of ... confusion of the issues or ... considerations of undue delay, waste of time or needless presentation of cumulative evidence").

■ Finally, Defendant contests the trial court's decision to prohibit Defendant from testifying that Complainant owned a vibrator. We agree with the trial court's decision to prohibit the testimony. The danger of unfair prejudice plainly outweighed any probative value the evidence may have had. SCRA 11–413.

## V. *INEFFECTIVE ASSISTANCE OF COUNSEL*

Defendant asserts that he received ineffective assistance of counsel if the *Batson*-type objection is held to be untimely. He argues that defense counsel's failure to address the discriminatory use of peremptory challenges in a timely manner cast doubt on the reliability of the trial. We do not reach this claim.

■ Recent decisions of this Court have established that we will not decide denial of effective assistance of counsel claims unless the record on appeal establishes a prima facie case of ineffective assistance. *See State v. Richardson*, 114 N.M. 725, 729, 845 P.2d 819, 823 (Ct.App.), *cert. denied*, 114 N.M. 550, 844 P.2d 130 (1992); *State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct.App.), *cert. denied*, 114 N.M. 501, 841 P.2d 549 (1992); *State v. Powers*, 111 N.M. 10, 12, 800 P.2d 1067, 1069 (Ct.App.), *cert. denied*, 111 N.M. 16, 801 P.2d 86 (1990). A prima facie case is not made when some plausible, rational strategy or tactic can explain counsel's conduct. *Swavola*, 114 N.M. at 475, 840 P.2d at 1241. A prima facie showing also is not made unless there is a basis on the record for concluding that coun-

sel's conduct "resulted in prejudice" to the defendant. *See Richardson*, 114 N.M. at 729, 845 P.2d at 823. On the record before us, we cannot say that defense counsel's conduct was either clearly inexplicable or prejudicial.

The State observes, and Defendant does not dispute, that the petit jury consisted of four Hispanic and eight Anglo jurors, that the juror selected as an alternate and the prosecutor are both Hispanic, and that the victim is Anglo. As Judge Chavez notes in his dissent, Defendant is Anglo. The record in this case indicates that the venire panel consisted of thirty-eight people, of whom twenty-three or twenty-four have Hispanic surnames.

On these facts, an inference of discrimination based on ethnicity might have seemed speculative to counsel. *Cf. State v. Gonzales*, 111 N.M. 590, 596, 808 P.2d 40, 46 (Ct.App.), *cert. denied*, 111 N.M. 416, 806 P.2d 65 (1991) (Hispanic male defendant, prosecutor struck only Hispanic males, leaving a jury of eleven women and one man, of whom four were Hispanic; court analyzed ways in which a prima facie showing of intentionally discriminatory conduct can be made). The answer to the question of whether a trial court would have been willing to make the inference required is not so clear that we are willing to conclude that Defendant has made a prima facie showing of deficient trial performance by his counsel.

In addition, defense counsel might have had reasons related to Defendant's theory of the case for not opposing the prosecutor's use of the State's peremptory challenges. Perhaps counsel initially concluded that one or more of the prosecutor's challenges had removed an individual juror on whom Defendant would have used one of his peremptory challenges. Alternatively, counsel originally might have been satisfied that the final jury selected was a fair cross-section of the community and that Defendant's chances for an acquittal would not improve with any changes and might instead lessen. Neither of these possibilities seems so remote that we are prepared to say that Defendant has

shown deficient trial performance or a performance that probably resulted in prejudice.

In his dissent, Judge Chavez makes a thoughtful argument that failure to make a timely objection to a prosecutor's discriminatory use of peremptory challenges should be viewed as presumptively prejudicial on direct appeal and result in a remand for a *Batson* hearing. *See Ex Parte Yelder*, 575 So.2d 137, 139 (Ala.), *cert. denied,* —— U.S. ——, 112 S.Ct. 273, 116 L.Ed.2d 225 (1991). As indicated above, we think under our cases the record on direct appeal must show more than a failure to make a timely objection. We do not believe the record in this case shows any more than that. As a consequence, if we remand, in effect we have eliminated the rule established in this case that a *Batson* challenge must be made before the jury is sworn.

Absent a sufficient showing of ineffective assistance of counsel to justify remand for an evidentiary hearing on that claim, Defendant's argument is not properly before us. *See Richardson*, 114 N.M. at 729, 845 P.2d at 823. We conclude that the record on appeal does not establish a prima facie case of ineffective assistance of counsel. Defendant's claim in this instance is more appropriately suited to a post-conviction motion pursuant to SCRA 1986, 5–802 (Repl.1992). *See, e.g., Government of Virgin Islands v. Forte*, 865 F.2d 59, 64–65 (3d Cir.1989); *cf. People v. Reyes,* 161 A.D.2d 201, 554 N.Y.S.2d 587, 588 (N.Y.App.Div.1990) (writ of coram nobis).

Defendant also argues that he did not receive effective assistance of counsel because his trial counsel failed to call April and Joe Orcato to testify on Defendant's behalf. However, the alleged testimony of the two witnesses is not a matter of record, and thus it cannot be reviewed on appeal. *Powers,* 111 N.M. at 12, 800 P.2d at 1069.

Finally, Defendant notes that defense counsel failed to object to the prosecutor's method of questioning his wife due to her hearing impairment and did not adequately impeach Steve Crawford and Toby Romero. The decision to object is a matter of strategy and tactics on which we will not attempt to second-guess trial counsel. *See State v. Rodriguez,* 107 N.M. 611, 615, 762 P.2d 898, 902 (Ct.App.), *cert. denied,* 107 N.M. 546, 761

P.2d 424 (1988). We cannot say on this record that defense counsel failed to "exercise [the] skill, judgment and diligence of a reasonably competent defense attorney." *See State v. McGuinty,* 97 N.M. 360, 363, 639 P.2d 1214, 1217 (Ct.App.1982). We need not address Defendant's contention regarding the lesser-included offense instruction because we have addressed that issue on the merits.

## VI. *AGGRAVATING FACTORS*

Defendant suggests that aggravating circumstances must be proven beyond a reasonable doubt. However, he fails to cite any authority for his position. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (we need not address arguments unsupported by cited authority). We will uphold the trial court's aggravation of a sentence if the circumstances relied on are supported in the record and constitute proper factors to consider under the enhancement statute. *See State v. Bernal,* 106 N.M. 117, 119, 739 P.2d 986, 988 (Ct.App.), *cert. denied,* 106 N.M. 81, 738 P.2d 1326 (1987). We agree with Defendant regarding one factor. We discuss the other factors first.

Defendant seems to contest harm to Complainant as an aggravating circumstance for two reasons. To the extent he argues that harm to Complainant is already taken into account by the legislature in its creation of the offense of CSP II involving personal injury, we disagree. Defendant was convicted of CSP II based on his use of a deadly weapon. Consideration of harm to the victim is not repetitive. Defendant also argues that there is always some harm to the victim of any violent crime. That is true. However, it is well settled that the court may take into account the circumstances surrounding the offense, and in so doing may include the extent of harm to the victim. *See Bernal,* 106 N.M. at 118, 739 P.2d at 987. Evidence of Complainant's physical injuries and psychological trauma were sufficient to support the trial court's exercise of discretion in relying on the harm to Complainant as an aggravating circumstance. *See id.*

■ Defendant also contends that the trial court improperly relied on his lack of remorse as an aggravating circumstance. *See State v. James,* 109 N.M. 278, 281–84, 784 P.2d 1021, 1024–27 (Ct.App.), *cert. denied,* 109 N.M. 262, 784 P.2d 1005 (1989). However, in *James,* this Court expressed concern for lack of remorse as an aggravating circumstance when it is interwoven with a trial court's concern about suspected perjury. Moreover, our Supreme Court has stated that lack of remorse can be a proper aggravating circumstance. *See Swafford v. State,* 112 N.M. 3, 17, 810 P.2d 1223, 1237 (1991). In this case, the trial court addressed itself to a pattern Defendant had exhibited over the course of several years for not taking responsibility for his own actions and showing little remorse for the effect of his actions on others. Because the court did not express concern about suspected perjury, and because the court considered Defendant's lack of remorse over a long period of time in a variety of situations, we believe that the trial court did not err by using lack of remorse as an aggravating circumstance. *Id.*

■ Defendant suggests that there is no evidence to support the trial court's determination that he harmed his own family and harm to his family should not have been considered. The trial court relied on the alibi Defendant's wife provided and the letter she wrote in his support. We agree that there is no direct or circumstantial evidence that would support consideration of harm to Defendant's wife as an aggravating circumstance. The evidence in the record required speculation about Defendant's role in inducing the alibi and the letters, and the evidence involved conduct not directly related to Defendant's dangerousness or candidacy for rehabilitation. We do not believe that the legislature contemplated allowing the trial court to consider such consequences of the crime to be included as an aggravating circumstance. *See Bernal,* 106 N.M. at 118–19, 739 P.2d at 987–88. Furthermore, it seems to have overlapped with a concern about Defendant's lack of remorse. Under these circumstances, we believe the Supreme Court has indicated that the proper course is to remand for resentencing. *See Swafford,* 112 N.M. at 17 n. 11, 810 P.2d at 1237 n. 11.

## VII. CONCLUSION

Defendant contends that cumulative error, especially at the sentencing stage, deprived him of a fair trial. We have identified no error other than in the course of sentencing, which did not affect Defendant's right to receive a fair trial, but rather requires a remand for resentencing. Accordingly, although we affirm Defendant's convictions, we vacate Defendant's judgment and sentence and remand this case to the trial court for resentencing.

IT IS SO ORDERED.

BIVINS, J., concurs.

CHAVEZ, J., concurring in part and dissenting in part.

CHAVEZ, Judge (concurring in part and dissenting in part).

I do not agree with the majority opinion's determination that Defendant was not entitled to the lesser-included-offense instruction of CSP III. I believe there was evidence presented at trial tending to establish that the sexual offenses were committed without the use of a gun which entitled Defendant to a CSP III instruction for each of the CSP II counts submitted to the jury. In addition, I do not agree that defense counsel's failure to object to the prosecutor's seemingly discriminatory use of peremptory challenges during jury selection did not amount to a prima facie case of ineffective assistance of counsel. Because I would reverse on the jury instruction issue or remand for a *Batson* hearing on the jury selection issue, I dissent. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). I concur, however, in the dispositions of the remaining trial and sentencing issues.

### A. LESSER–INCLUDED–OFFENSE INSTRUCTION

As the majority opinion states, a defendant is entitled to a lesser-included-offense instruction if there is some view of the evidence tending to establish the lesser offense as the highest degree of the crime committed. *State v. Fish,* 102 N.M. 775, 779, 701

P.2d 374, 378 (Ct.App.), *cert. denied,* 102 N.M. 734, 700 P.2d 197 (1985). The difference between the two degrees of CSP in this case is whether or not a gun was used in the commission of the offense. There was evidence in this case that could establish that Defendant did not use a gun during the attack on Complainant, even though the evidence adduced at trial surrounding the issue of the gun was conflicting. Complainant testified that Defendant gained entry to her house, took her to an upstairs bedroom by force, handcuffed her, and then pulled a holstered gun out of his pocket, which he used to threaten her. Defendant, on the other hand, testified he did not own the gun the police found at Complainant's house a week after the attack and that he had seen the gun in question in Complainant's possession a month before the incident. Furthermore, Defendant's wife also testified to seeing the gun in Complainant's car a month before the incident and the police found no fingerprint evidence connecting the gun or the holster to Defendant. Thus, the conflict in the evidence was whether Defendant had the gun and holster in his pocket and brought the gun into Complainant's house on the night of the attack, as Complainant claims, or whether the gun was Complainant's and was never in Defendant's possession to be used during any attack, as Defendant claims.

The trial court rejected any view of the evidence that would have justified giving a CSP III instruction for the stated reason that the testimony of Complainant had to be taken as "a complete package" and accepted or rejected in its entirety. The trial court came to this conclusion because Defendant had generally presented an alibi defense, denying he was involved in any way with the attack on Complainant. The majority opinion affirms based on the trial court's reasoning, citing to *State v. Manus,* 93 N.M. 95, 101, 597 P.2d 280, 286 (1979), *overruled on other grounds, Sells v. State,* 98 N.M. 786, 653 P.2d 162 (1982), for the proposition that a lesser-included-offense instruction is not warranted if the evidence would have to be fragmented to the point of distortion for the lesser offense to be the highest degree of offense committed. I do not believe, however, that any distortion is necessary to obtain some view of the evidence tending to establish that Defendant did indeed rape Complainant, but did not use a gun during the attack.

The majority is correct in stating that a jury would have to reject Defendant's alibi defense but believe his testimony about the gun. In other words, they would have to accept Complainant's testimony about the attack in general but reject her testimony about the gun in order to find Defendant guilty solely of CSP III. The majority finds this kind of fragmentation of the evidence impermissible in the context of entitlement to a lesser-included-offense instruction. This kind of fragmentation occurs at trial on a regular basis, however, when juries believe only parts of a witness's testimony or accept only parts of the evidence presented by the prosecution or defense. If this was not the case, there would be no trials in which the verdict resulted in conviction on some charges and acquittal on others.

The majority also states that there must be some evidence to support the lesser-included-offense instruction other than that obtained from taking parts of testimony from the victim and parts from Defendant. I need not decide whether I agree with this statement because it does not apply in this case. There *was* other evidence to corroborate Defendant's testimony about the gun—his wife's testimony and the lack of fingerprint evidence. This corroborating evidence puts Defendant's case on a par with *Fish,* in which no knife being found supported the defendant's testimony that he did not use a knife in the incident, and *State v. Benavidez,* 94 N.M. 706, 707, 616 P.2d 419, 420 (1980), *overruled on other grounds, Sells,* 98 N.M. at 786, 653 P.2d at 162, in which another witness testified about the defendant's gesture with his arm; in both of those cases, a lesser-included instruction was given.

The majority opinion ends by saying Defendant was either innocent of any crime or guilty of CSP II. From this statement and from the cases the opinion cites from other jurisdictions, the majority seems to take the view that Defendant was not entitled to a CSP III instruction just because he asserted

an alibi defense at trial. This is not the law in New Mexico and I would not so hold. *See State v. Privett*, 104 N.M. 79, 81, 717 P.2d 55, 57 (1986); *Benavidez*, 94 N.M. at 708, 616 P.2d at 421.

In sum, there is a legitimate view of the evidence in this case that Defendant did not use a gun during the sexual assault which could sustain a finding that the lesser offense of CSP III was the highest degree of the crime committed. *Fish*, 102 N.M. at 779, 701 P.2d at 378. Relying on settled New Mexico precedent, I believe that Defendant was entitled to a CSP III instruction. Accordingly, I would reverse Defendant's CSP II convictions and remand for a new trial on those charges.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL FOR UNTIMELY *BATSON* CHALLENGE

The majority opinion does not reach the issue of whether Defendant received ineffective assistance of counsel due to the untimeliness of his objection to the prosecutor's seemingly discriminatory use of peremptory challenges at trial. The majority reasons that Defendant failed to establish a prima facie case of ineffective assistance because trial counsel might have been implementing a plausible, rational strategy or tactic which is not apparent from the record on appeal. I disagree with this reasoning in Defendant's case and would hold that trial counsel's performance was deficient because he did not make a timely objection to discrimination by the State in the jury-selection process.

As a preliminary matter, I believe Defendant made a prima facie showing of discriminatory use of peremptory challenges by the State. Defendant is white. The State used one hundred percent of its peremptory challenges to remove Hispanic venirepersons from the panel. Under *State v. Gonzales*, 111 N.M. 590, 596–97, 808 P.2d 40, 46–47 (Ct.App.), *cert. denied*, 111 N.M. 416, 806 P.2d 65 (1991), this constitutes a prima facie showing of intentional discrimination that states a claim under the Equal Protection Clause. *See Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (defendant has standing to object to race-based

exclusions of jurors even when defendant is not same race as excluded jurors). The issue of ineffective assistance of counsel must be examined in light of the prima facie case of racial discrimination in jury selection established by Defendant through his attorney's untimely objection.

The standard by which an attorney's conduct must be assessed when determining whether a defendant received ineffective assistance of counsel is an objective one. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984) ("When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."). Thus, not just any plausible strategy or tactic on the part of defense counsel will suffice to meet the constitutional standard of objective reasonableness. The attorney's conduct should be measured against the range of competence expected of criminal defense attorneys. *See id.* The possible strategies listed in the majority opinion for defense counsel's failure to object in this case might be plausible. Indeed, defense counsel may even have had a rational tactic in mind when he waived, through default, Defendant's vital right to challenge the fairness of the selection of the jury. *Cf. Powers*, 499 U.S. at 411, 111 S.Ct. at 1371 (discriminatory use of peremptory challenges harms a defendant because "racial discrimination in the selection of jurors 'casts doubt on the integrity of the judicial process,' ... and places the fairness of a criminal proceeding in doubt.") (quoting *Rose v. Mitchell*, 443 U.S. 545, 556, 99 S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1979). However, I do not believe making an untimely objection to discriminatory jury selection, with the result that the injustice cannot be cured at trial or on appeal, is reasonable by the norms and standards of the legal profession in New Mexico.

Courts from other jurisdictions that have considered this issue in cases presenting the same or similar facts as those presented by Defendant's case, support the conclusion that counsel's performance was deficient when he did not make his objection in time for it to

accomplish its goal. *See Ex Parte Yelder,* 575 So.2d 137, 139 (Ala.1991) (failure of counsel to make timely *Batson* objection to prima facie case of purposeful discrimination by state in jury selection process is ineffective assistance of counsel and prejudice will be presumed), *cert. denied,* —— U.S. ——, 112 S.Ct. 273, 116 L.Ed.2d 225 (1991); *Jackson v. Thigpen,* 752 F.Supp. 1551, 1562 (N.D.Ala. 1990) (counsel's failure to object at all to prosecutor's blatantly discriminatory use of peremptory challenges was not a "reasonable exercise of professional judgment" and constituted ineffective assistance of counsel); *Williams v. State,* 834 S.W.2d 85, 87 (Tex.Ct. App.1992) (trial counsel's performance deficient in not raising *Batson* issue on timely basis); *Batiste v. State,* 834 S.W.2d 460, 466 (Tex.Ct.App.1992) (same); *cf. People v. Reyes,* 151 A.D.2d 262, 542 N.Y.S.2d 178, 179 (N.Y.App.Div.1989) (appellate counsel's failure to raise *Batson* claim on appeal, where prosecutor had peremptorily removed all Hispanic venirepersons at trial, constituted ineffective assistance of appellate counsel); *Government of Virgin Islands v. Forte,* 865 F.2d 59, 64–65 (3d Cir.1989) (counsel's conduct in failing to object to seemingly discriminatory use of peremptory challenges when counsel knew *Batson* was pending in the Supreme Court was unreasonable under prevailing standards). What is notable about the cited cases is that none of the courts involved discussed the possible strategic reasons for untimely or missing *Batson* objections; rather, the courts determined that the conduct in question was *objectively* unreasonable and quickly turned to the harder question involved in the issue before them, that of prejudice to the defendant from counsel's deficient performance.

These courts have devised a range of approaches to analyzing the question of prejudice in their cases. The Alabama Supreme Court has taken the simplest approach by holding that prejudice will be presumed when defense counsel is ineffective for not making a timely *Batson* objection where the claim has merit. *Yelder,* 575 So.2d at 139. Texas, on the other hand, conducts a harmless error analysis for constitutional error. *See Williams,* 834 S.W.2d at 85. The approach that makes the most sense to me involves tying prejudice to whether the defendant would have prevailed on his or her *Batson* objection. If the defendant would have prevailed, then he or she has been prejudiced by the incompetence of the trial attorney and is entitled to a new trial. *See Yelder,* 575 So.2d at 139; *Jackson,* 752 F.Supp. at 1561–62; *Forte,* 865 F.2d at 64–65.

I believe this approach to be the most prudent and the fairest to both parties in a criminal prosecution. Following the majority of jurisdictions, I would find that Defendant established a prima facie case of ineffective assistance of counsel based on the untimely *Batson*-type objection. I would remand his case for a hearing and reverse in the event the trial court found the State used its peremptory challenges to discriminate against Hispanics during jury selection.